### BEAN *v.* COLEMAN.

Nothing passes as incident to the grant of an easement but that which is necessary for its reasonable and proper enjoyment.

The grant of a private passway, or right of way, in general terms, over a portion of the grantor's land, without any reservation of the right to erect bars or gates across said way, does not necessarily imply a negation of the owner's right to inclose his land, and to erect gates across said way.

Notwithstanding such a grant, there remains with the grantor the right of full dominion over, and use of the land, except so far as a limitation of his right is essential to the fair and reasonable enjoyment of the right of way which he has granted.

A court of equity will not ordinarily exercise jurisdiction to settle or establish a disputed right, which the party can as well settle and establish in a suit at law. But if a right has been established at law, or is admitted, and a question arise as to its extent, or the manner in which it shall be used, a court of equity will exercise jurisdiction to define and limit such right, and to regulate such use.

IN EQUITY. The bill alleges that the plaintiff owns a certain farm in Newington, describing it, and that the defendant has a certain right of way over a portion of said farm, describing the way; that for about thirty years there has been a gate across this way, about half way from Bean's house to Coleman's land, and another upon the line dividing the plaintiff's land from that of the defendant; that the defendant holds this right of way subject to the right of the plaintiff to keep the first mentioned gate closed from the first day of August to the first day of December, in each year, during which

time the defendant is bound to close the gate whenever he passes through. It charges that the defendant, in the year 1859, between the first day of August and the first day of December, left this gate open whenever he passed through, and required his servants to do the same, whereby the plaintiff's cattle, &c., entered the plaintiff's field and destroyed his crops; and that the defendant threatens that he will hereafter leave the gate open, and cause his servants to do the same. It prays an answer, an account of the damages done the plaintiff, and that the defendant be perpetually enjoined to shut the gate, &c., between said dates.

The answer admits the plaintiff's ownership of his farm; admits and claims that the defendant has the right of way across said farm, as set forth in the bill, but denies that there has been any gate across the way for thirty years, or at any time except at certain irregular intervals, and denies that the defendant holds this right of way, subject to any obstruction or servitude; but alleges that he is entitled to a free and unobstructed use of the way at all times. The answer then sets out the defendant's title to this way, in various deeds and reservations, which will appear in the opinion. It admits that occasionally, in the fall of the year, with the permission of the defendant, the plaintiff and his grantor have set up an old gate, or a board across this way, but that it was done irregularly, not every year, and never until the fall of 1859 without the permission of the defendant first sought and obtained, and subject to his right to remove the same at pleasure, and that these obstructions were never continued more than a few weeks at a time:

That in the fall of 1859 the plaintiff erected the obstruction across the way without his permission, and that he had removed the same, as alleged; and claims that he had the right to do so, and that it would be his duty to do the same again, should the way be thus obstructed, in order to protect himself against the unlawful infringement of his rights by the plaintiff. It states that the defendant is ignorant of any damage done to the plaintiff by reason of his cattle escaping into his field, but that, if any was done, it was by the fault of the plaintiff only.

The cause was heard upon the bill, answer and proofs.

*Hatch*, for the defendant.

1. It seems plain that the plaintiff has mistaken his remedy. The act of the defendant was at worst but a trespass, for which the plaintiff had a plain and sufficient remedy at law. He can not claim the right he asserts under any deed, nor does he pretend that he has ever established his right to keep up the gate at law. He does not aver or suggest that any great or irreparable injury is likely to occur from the defendant's acts or threats. His right to erect the gate is fully denied in the answer, and controverted in the evidence. If this suit may be maintained, all trespasses may be punished in this court, and at monstrous expense. *Coe* v. *Lake Co.*, 37 N. H. 244, and cases cited; *Parker* v. *Lake Co.*, Circuit Ct. U. S., May term, 1860.

It may be suggested that the right claimed by the plaintiff is to

erect a gate only for a portion of the year, and that a suit at law against the defendant for leaving open the gate, or for throwing it down, would not determine the extent of the plaintiff's right. That is true. But the defendant denies the right of the plaintiff, at any time; and until the plaintiff has established at law that he has some right, he is not entitled to come here to have its limits defined. *Non constat,* that if at law it shall be shown that the plaintiff has any right to erect a gate, there will remain any dispute as to the period of its continuance. The bill must be dismissed.

2. But the plaintiff must also fail on the merits of the case. He does not prove the right he alleges by grant or by prescription, and can not sustain his cause upon the evidence. (Reviews the evidence.)

*Hackett,* for the plaintiff.

The plaintiff's positions are:

1. That he is, and for more than twenty years has been, in possession and enjoyment of the privilege which the defendant threatens, at constantly recurring intervals, to interrupt, and irreparably to injure.

2. That for the last fifteen years he has held this privilege under the defendant's grant (see defendant's deed to the plaintiff of May 6, 1846), and that the court may enjoin the defendant against this threatened breach of his own covenant. 5 Ves. 555; 6 Ves. 104; 2 Story Eq. Jur., secs. 927, 928.

3. That one suit at law would not determine the extent of the plaintiff's right, or give him any security against future injury.

4. That where a plaintiff brings a bill in equity to divest a defendant of a privilege which the plaintiff admits the defendant has long possessed, claiming right, he admits a dispute with the legal presumption against himself, and the court will decline to take jurisdiction of the suit. But when the facts are reversed the presumption is reversed, and the court takes jurisdiction. As in this case if the plaintiff has been in possession of a privilege claiming right long enough to raise a presumption of a grant, a simple denial of the plaintiff's right by the defendant does not, *ipso facto,* oust the jurisdiction of a court of equity. *Coe* v. *Lake Co.,* 37 N. H. 244; *Webber* v. *Gage,* 39 N. H. 182.

5. That a suit in equity is the only mode of avoiding a multiplicity of suits, or of securing an adequate remedy. 13 Pick. 169; 22 Pick. 333.

6. That the defendant has made no sufficient answer upon the merits. (Reviews the evidence.)

SARGENT, J. The plaintiff's title to his farm, set forth in the bill, is admitted, and that the defendant has a right of way through it is also admitted. But the plaintiff claims a right to keep up a gate across this way, at certain seasons of the year, between the defendant's land and his house, and also to have the gate on the line between him and the defendant kept shut all the time except when the defendant has occasion to pass and repass through the same.

The defendant claims the right to keep the gate upon the line between him and the plaintiff open or shut, at his own pleasure, and that the plaintiff has no right to keep up a gate at all at the place intermediate between his land and the plaintiff's house.

Easements are ordinarily of two kinds, — by grant and by prescription; those by necessity being treated as easements by grant by operation of law. 1 Saund. 323, note c. The plaintiff claims that he has acquired the right, by prescription, to keep the last mentioned gate shut during a portion of the year, and that the defendant, whatever his right of way may have been originally, now holds it subject to such right of the plaintiff. There is no doubt that such rights as the plaintiff here claims may be acquired by prescription. But the plaintiff's evidence falls short of sustaining his claim fully, or of establishing his right as claimed. And even though the evidence might preponderate in his favor, so that a jury might be warranted in finding in favor of his claim, yet, so long as the question is one really contested and in dispute, we should not, in a case like this, undertake to decide it; and if this were all there was in the plaintiff's case we should dismiss the bill at once, upon the ground that it was the plaintiff's duty first to establish his right at law, or at least to establish that he had some right to obstruct the way. If, after such right has been established at law, the parties disagree about the extent of that right, or the mode of its use and exercise, equity might interfere to regulate the use, and to limit and define the right; *Burnham* v. *Kempton*, 44 N. H. 78; *Ranlet* v. *Cook*, 44 N. H. 512; and this upon the ground of preventing a multiplicity of suits.

But the plaintiff claims the right to keep up this gate upon another ground, — that of a grant. A portion of the land of the plaintiff was conveyed to him by the defendant, reserving a right of way across it; and the plaintiff claims that at the time of this grant and reservation the gate was up at the place where he now claims to have it, and that this operated as a restriction upon the right of way so reserved.

But if that were so it would be a restriction that would apply as well to one season of the year as to another, and would give him the right to keep the gate up at that place all the time. The defendant claims that the fact is otherwise in regard to the gate being up at the time of the deed and reservation; but however that fact may have been, that the reservation in the deed was for a way unobstructed and without incumbrance, and that such being the fact he is now entitled to such unobstructed way, whatever incumbrances may have existed before or at the time of such reservation.

The words of the reservation in the defendant's deed of the land to the plaintiff are as follows: "Reserving a right of a passway on the southerly side of the field wall, in the common wheel-way near the wall, to the said Coleman's land." Now this stands in no different position from what it would if the plaintiff had owned this land before, and had conveyed to the defendant the same right of way which the defendant reserved when he conveyed the land to the plaintiff. And this leads us to consider the nature and char-

acter of a way by grant, where nothing is said in the deed about obstructions. In some cases we find the way granted or reserved through gates and bars. *Russell* v. *Jackson*, 2 Pick. 574. In other cases it is stipulated that nothing in the grant shall be construed to prevent the owner of the soil from erecting gates, &c.; but in most cases a right of way, a passway, or a right of passage, is granted or reserved in general terms without qualification.

Cases of this kind often occur in dividing an estate between the heirs, or in setting off dower in lands to widows. A right of way is given to one to pass over the close of another, to his own close, and nothing is said about gates or bars either way. So in setting off the different parts of a house to different heirs, or in setting off a portion of it as dower to the widow. A portion of the house is set off with a right of way to the same through the front yard, and the front entry or hall, in general terms. Such rights of way are held as if by grant. In such cases it would hardly be held that the occupant of such part of the house, with this right of way to it, would have the right to insist that there should be no gate kept up at the entrance of the front yard, or that the front door of the house should be taken down, and the passage-way kept clear of all obstructions, because no reservation was made of the right to keep up and maintain such gate and door.

And suppose a part of a barn is set off to a widow as a portion of her dower, with a right of way, in general terms, through the barn yard and the barn floor to the part thus set off. She could hardly claim that the gate or bars at the entrance of the yard, and the large doors of the barn, through which the floor-way of the barn is reached, should be removed and kept open, so that she might enjoy her right of way unobstructed. Suppose a farm, at the decease of its owner, to be divided between his two sons, so that each should have one half of the buildings, garden, &c. Then A for his share of the farm has two fields or closes set off to him nearest the buildings, while B has a field for cultivation, more remote, with a right of way through both closes of A, to give him the means of access to the buildings. And suppose A needs to use one of his closes for cultivation, in which to raise his corn, grain and grass, and the other as a pasture for his sheep and cattle, and B's right of way is assigned to him in a given path or track, without any restrictions, and A's two closes are divided by a fence with a gate across this passway of B, which constitutes a part of this fence; must A be compelled to tear down this gate, or keep it open, thus turn his two closes in common, and thus lose the benefit and use of the one he wishes to cultivate; or, in order to save that, hire his cattle and sheep pastured abroad, and lose the benefit and use of the other, because B has a private right of way through both? Or must he, in order to occupy his fields or closes, fence out this way on both sides, and thus leave an open, unobstructed way for B? Or is the right of way which B thus holds to be construed as the right to such reasonable use of the land of A for a way as shall be consistent with A's right to occupy and improve his land? We are satisfied that the general understanding among men is, that the

latter is the correct construction. But for some reason the question does not seem to have often arisen, as the authorities bearing directly upon the point are not numerous.

It is said in 3 Kent Com. 419, 420, that "it is a principle of law that nothing passes as incident to the grant of an easement but what is requisite to the fair enjoyment of 'the privilege'"; and *Lyman* v. *Arnold,* 5 Mason 195, is cited as authority. Now, in the case supposed, we think it would be giving B a fair and reasonable use of his right of way to require him to open the gate between the two closes of A and close it again, whenever he had occasion to pass, rather than that A should be obliged to lose the benefit and use of his land, or fence out this private way in the manner before stated.

· *Maxwell* v. *McAtee,* 9 B. Mon. 20, is a case in point. It was trespass for pulling down the plaintiff's gate and fence adjoining. The defendant justified the pulling down the gate, &c., under claim of a private passway, or right of way over the plaintiff's land, and that he entered and tore down the gate, &c., as he lawfully might. The case finds that there had been an arrangement between the defendant and the plaintiff's grantor by which the defendant was to have a passway across the land in question, commencing at the place where the gate stood ; that there was nothing in the agreement as to whether the passway should be used with or without a gate; but at the time of the agreement there was a fence on this line and a gate at the *locus in quo ;* and that after this agreement there had been a gate kept there a part of the time, and a part of the time none ; that when the plaintiff purchased the land there was no gate there, but he erected a new one and placed it there, which the defendant took away. The court below at the trial ruled and instructed the jury that the plaintiff had no right to erect the gate across the passway unless such right had been expressly reserved in the agreement by which the passway was given. There was a verdict for the defendant, and the plaintiff appealed.

*Marshall,* C. J., in delivering the opinion of the Court of Appeals, says : " Conceding that the agreement for a passway was in terms equivalent to a grant, and that this grant was valid, still it is evident that the general grant of a passway or right of way over the land of the grantor, in a particular place, does not confer either the possession or the right of possession of the land, but the mere right of way, or of passing over it. And nothing passes as incident to such a grant but that which is necessary for its reasonable and proper enjoyment. Notwithstanding such a grant, there remains with the grantor the right of full dominion and use of the land, except so far as a limitation of his right is essential to the fair enjoyment of the right of way which he has granted. It is not necessary that the grantor should expressly reserve any right which he may exercise consistently with a fair enjoyment of the grant. Such rights remain with him, because they are not granted. And for the same reason the exercise of any of them can not be complained of by the grantee, who can claim no other limitation upon the rights of the grantor but such as are expressed in the grant, or necessarily implied in the right of reasonable enjoyment."

" Is the grantor of a passway over his land restricted by the nature

and object of the grant from erecting gates at the *termini* of the passway, so as to inclose his land, and must he, unless the privilege of thus inclosing it is expressly reserved, leave it open or separate it from the passway by a lane or fence running along the whole length ? Is a gate of proper width, and opening in the ordinary way, either an unreasonable or an unusual obstruction of the private right of way over the land of another ? Is it essential to the fair and convenient enjoyment of the right that there should be no gate ? " He concludes that it may be safely assumed that the grant of a passway in general terms over a particular part of a grantor's land does not imply a negation of his right to erect gates at the *termini* of the way in entering and leaving his land; and that among the proprietors and cultivators of land such a grant would not be generally understood as depriving the owner of the land of his right of thus inclosing his land, and that the instructions to the jury were erroneous. The judgment was reversed and a new trial granted.

Now let us see what the facts in the present case are, as admitted by the answer and the evidence. It appears that all the land now owned by both these parties was originally the farm of one William Shackford, who died prior to 1812 ; that in 1812 this farm was divided between his heirs, — Josiah Shackford having the westerly part, and the heirs of Samuel Shackford the easterly part. Suppose the annexed sketch to represent the whole farm, the line A E will represent the dividing line between these two portions as thus divided.

It does not appear whether any fence was ever erected on this line A E or not. In this division the heirs of Samuel, who had all east of the line A E, had also a right of way through the other part, which was set off to Josiah, to the buildings and to the land of De Rochemont, on the south, as sketched in the plan; and it appears that a gate has always been kept up on the De Rochemont line where this way crosses it, at g 1, on the plan. Subsequently one Varney purchased the westerly half of this farm of said Josiah. He afterward purchased the undivided rights of some of the heirs of said Samuel, and on the 29th of May, 1838, said Varney and the other owners of the east half of said farm, made partition, and a strip of land lying easterly of the above described line and about fourteen rods wide where the path crossed it, was set off to said Varney (the piece contained between the lines A B and B C on the plan), "reserving in the same a right of way to pass and repass across the same, to the easterly part of said farm, in the paths, as usual." A fence was built on this line B C, with a gate just south of the middle of the line, which fence was divided between the adjoining owners: Varney having the south half, including the gate, for his part (g, 2, representing this gate and the point x the place where the fence was divided).

This line B C continued to be the dividing line between the farms, and the division fence upon it had been maintained till 1846. In the meantime Bean, the plaintiff, had purchased Varney's part, and Coleman, the defendant, the easterly part, of the remaining heirs of Samuel, and May 8, 1846, Coleman conveyed to Bean a strip of land bounded west by said Bean's land, and extending north and south on Bean's line, and is the piece designated on the plan as B, C, D, "reserving the right of a passway on the southerly side of the field wall, in the common wheel-way near the wall to said Coleman's land;" since which the line C D has been the dividing line, and a fence has been built on this line and is divided, Coleman having the north half, including the gate, and Bean the southerly half. A gate has been maintained by Coleman since 1846 on this line at g 3, on the plan, and x, in the same line, shows where the fence is divided. Since 1846 the fence on the line B C has been kept up by Bean for the purpose of dividing his fields, and he has kept up a gate in this line at g 2, some of the time, and this is the gate concerning which the principal controversy has arisen.

Now in regard to the gate on the present dividing line between the land of those parties, it is incumbent on the defendant to keep it shut, except when he is passing through it, as much as it is to keep the remainder of his half of the fence in repair. His having a right of way over the plaintiff's land would not justify him in leaving this gate open, except when he was passing through it, any more than it would in leaving any other part of his fence down. If the defendant's cattle should pass through this gate into the plaintiff's field, when left open by the defendant, he would be liable for the damage as much as though they had passed over any other insufficient portion of his own fence. The same was true of the gate in the line B C prior to 1846, and while that was the dividing

line between the land of these parties, with this difference, that there the gate was in the plaintiff's part of the fence, and he must keep it in repair; and the defendant then, though he had the right to pass through the gate when he pleased, had no more right to leave it open than he had to take down any other part of the plaintiff's fence. The fields on the opposite side of this fence may have been used and occupied in such a way that the gate may not have been kept shut all the time prior to 1846, but that did not affect the right. This gate was there like any other part of the division fence in all respects except that the defendant might open it and pass through, as he had occasion, into the path on the plaintiff's land, without becoming a trespasser as he would be if he opened any other part of the plaintiff's fence and passed through there.

Now since the plaintiff has owned the land on both sides of this old line fence, he might take it down if he pleased, and occupy his fields in common, and thus relieve the defendant from this obstruction. But he was not obliged to do this if he needs to keep up this old fence and gate a portion of the year in order to the reasonable enjoyment and use of his land. He must of course afford the defendant at such seasons of the year a reasonably convenient mode of passing in the way here, as by a gate or bars, and there is no suggestion made that the gate which the plaintiff erected in 1849 was not reasonably convenient for that purpose. When the defendant conveyed this last parcel of land to the plaintiff, he conveyed all rights to occupy, to fence, to improve, and to have exclusive possession and control of the same, except so far as was necessary for the defendant in the reasonable use and enjoyment of the private right of way which he reserved. What shall constitute this reasonable enjoyment of the right of way must often depend very much upon the manner in which the owner of the soil may need to occupy and use his land. The rights of the parties are correlative.

Upon the construction which we give to the grants and reservations in the deeds in this case, the only question left to be settled is as to the necessity of this gate in order to the reasonable enjoyment and control of his land by the plaintiff; and perhaps, also, the subsequent question might arise, whether the gate, if found necessary, was suitable and reasonably convenient for the defendant's use. But the plaintiff proves no damage in this case, so that no account is needed; and if he did it is difficult to see what there is concerning it that requires the intervention of a court of equity, or why such damage could not as well be assessed in a court of law; and as the plaintiff has not established any right to keep his gate at the *locus in quo*, at any time, at law, and as such right is not admitted, no perpetual injunction would be granted; and as no irreparable damage or mischief is here threatened, it is not a case where equity will assume jurisdiction. *Coe* v. *Lake Co.*, 37 N. H. 244, and cases cited; *Burnham* v. *Kempton,* and *Ranlet* v. *Cook, qua supra.*

*Bill dismissed.*