# HILLSBOROUGH,

## DECEMBER TERM, A. D. 1844.

## STATE v. ATHERTON.

In this State a highway may be created by a dedication or donation of the land by the owner, accompanied by an acceptance or recognition of the way by the public authority.

Such dedication may be proved either by the express act of the owner, or any act of his indicating his intention to dedicate.

The town upon which is the burden of repair may accept land thus dedicated as a highway, either by an express vote, or a vote raising money to repair, or any other act recognizing an obligation to repair; or where no repairs are needed, by twenty years' use without objection by the town or its authorized agents; or by substituting a dedicated way for an ancient highway.

The act of February 27, 1786, repealed the common law only so far as it covered the same ground.

Chap. 53, sec. 7, Revised Statutes, providing that ways not laid out agreeably to statute law shall not be deemed highways, has no such retroactive operation as to a highway theretofore lawfully existing, that an indictment then pending as to a nuisance in such highway can not be further prosecuted.

An indictment for a nuisance for placing a building in a highway, need not allege what particular part of the building is an encroachment on the way.

Where it appeared that the principal agent of a corporation whose "first business was to lay out the grounds of the company in order to dispose of them," caused plans of the same to be made leaving streets laid out upon them; it was held that it was within the powers of such agent to lay out and dedicate land for highways, in the property of the company

To constitute the acts of the selectmen an acceptance or recognition of a highway so as to bind the town, there must be in them the concurrence of a majority of the selectmen, or such circumstances that such actual concurrence may be inferred.

State *v.* Atherton.

The testimony of a highway surveyor is inadmissible to prove the contents of his warrant, without its production, or proof of its loss.

Declarations of the agent or director of a manufacturing company are not admissible to prove a dedication of its land for a highway, unless they constitute a part of the *res gestæ* of dedication.

IN this case the indictment alleged that before the commencement of the nuisance described, there was and still is, a common public highway in the town of Nashua, leading from the Indian Head Coffee House, southerly by the house of Benj. Burke, and the shops of Robert Moore, Jefferson Rockwood, and Wm. White, to the bridge which crosses Nashua River near M'Kean's store, used by the good citizens of this State to travel on and over; and that the respondent November 1, 1840, erected a part of a certain edifice in and upon said highway, to wit, 1152 feet, and continues the same, and thereby has narrowed and obstructed and stopped up said highway, &c., &c.

The government claimed that in 1825, the Nashua Manufacturing Company, being the proprietors of certain lands, caused a portion thereof to be set apart and dedicated to the public highway, from said coffee house to said bridge, forty feet in width from the easterly line thereof, and that said way had by its use for public travel ever since 1825, and by the recognition of the authorities of the town of Nashua, who had expended money and labor in repairing it, become a public highway, &c.

The defendant denied that any such dedication was made, and if made, that such dedication, use and recognition, would constitute a public highway.

To prove dedication, the State relied upon the following facts and testimony. It appeared that from March 1825 to 1828, one Benjamin was the principal agent of the company, and that his first business was to lay out the grounds of the company in order to dispose of them; and that he caused divers plans to be made having streets laid out upon them.

State *v.* Atherton.

William Boardman testified, that in and prior to 1825 he was in the employ of the company as engineer, that in the summer of 1825 Benjamin and he laid out such streets as were about to be built on, that he was directed to stake out Clinton street, the street in question, from said coffee house to said bridge; that he so laid and staked it out forty feet wide from the east side thereof; and that travel on Clinton street was a subject of consideration with said Benjamin.

Purchasers and lessees of lands from the company testified, that when making their negotiations with agents or directors of the company, the street or some part of it was by such agents and directors shown them and declared to be permanently located. A mortgagee of certain premises also testified that his mortgagor said to him that the land was to be kept open, but that he did not call it a street.

Deeds from the company were introduced in evidence, in which mention of the street was made, and also of its width forty feet.

No proof was offered or any pretence made that any part of the street was dedicated to the public, except by the act of Boardman under the direction of Benjamin in 1825; and of its being left open and used for a street since that time.

To prove acceptance of the street as a public highway, a number of witnesses were introduced who testified as to the mode and manner of its use by the public.

To show a recognition of the street as a public highway by the town of Nashua, a vote of the town passed in August 1825 was offered, appointing a committee to alter the bridge, but which made no mention of the way. Boardman testified that the end of the bridge was swung down toward Clinton street; that he was employed by the committee of the town to grade both Main and Clinton streets, and that the town paid the company for the grading.

Several persons testified that in their capacity as select-men of the town and otherwise, they made repairs upon the street; and Captain Adams testified that in 1827 he was highway surveyor—that he had a warrant which embraced Clinton street, and that as such surveyor he worked and made repairs on said street.

The defendant introduced evidence in rebuttal upon each of the above points.

The defendant objected that the testimony of the witnesses who detailed declarations of agents of the company or selectmen of the town, touching the fact of the existence, location, and extent of the street, and to the testimony of Captain Adams stating the contents of his warrant without producing it, were incompetent. Also that the proprietors of the land claimed to be dedicated, being a corporation having directors and a clerk, no evidence to prove the dedication claimed was admissible, other than a vote of the directors, or an instrument in writing in conformity with the by-laws of the corporation.

The court charged the jury, that they might take into consideration the recitals in the deeds introduced from the corporation, as evidence tending to prove a dedication of the way; and further that a public highway may become such in this State, by dedication and such use thereof by the public as highway, even though less than twenty years, as clearly to show the public utility, convenience, and necessity thereof, and by the recognition thereof by the authorities of the town in which the way is located without any laying out of the same by the public authorities under our statutes; to which the defendant objected.

The jury returned a verdict against the defendant, and he moved for a new trial.

The defendant, *pro se.* There are but three ways of creating public highways in this State. 1. By laying out of selectmen; 2. By court; 3. By use for such a length

of time, not less than twenty years, as to furnish a presumption of an original laying out.

Provincial and State legislation have covered the whole ground, and superseded the common law doctrine of creating highways by dedication. 13 Ann 1714, p. 52 ; N. H. Laws, 1714, p. 34 ; 5 Geo. II, 1719, p. 153 ; Act of Feb. 29, 1786, N. H. Laws (Ed. 1789), p. 53 ; Act of Feb. 8, 1791, N. II. Laws (Ed. 1797).

If necessary highways are not provided for by legislation, the judiciary can not supply the defect. 12 Art. Bill of Rights, N. H. Laws (Ed. 1783), p. 29.

The indictment is bad for uncertainty in not alleging what particular part of the building is an encroachment upon the way. Hawk., chap. 76, sec. 88 ; Rolle's Abridg., Indict., p. 81 ; 2 Chitty's C. L. 339 ; *Commonwealth* v. *Hall & a.,* 15 Mass. 240 ; *Commonwealth* v. *North Brookfield,* 8 Pick. 463 ; N. II. Const., Art. 15 Bill of Rights.

The evidence admitted to show a dedication and acceptance of the way, was wholly incompetent. 4 B. & Ald. 447 ; 7 B. & C. 257.

*Gove,* Attorney-General, for the State. The statutes cited by the defendant do not repeal the common law, but are only cumulative, leaving that law as it was. *Commonwealth* v. *Newbury,* 2 Pick. 59 ; *State* v. *Campton,* 2 N. H. 512 ; *Pritchard* v. *Atkinson,* 4 N. H. 9 ; *Hobbs* v. *Lowell,* 17 Pick. 405 ; *Valentine* v. *Boston,* 22 Pick. 75 ; *Cincinnati* v. *White,* 6 Pet. 431 ; *Woodyer* v. *Hadden,* 5 Taunt. 137 ; *Wood* v. *Veal,* 5 B. & A. ; *Rex* v. *Leake,* 5 B. & A. 469.

The corporation was bound by the acts of its agents in laying out the way. *Eastman* v. *Coös,* 1 N. H. 26 ; *Austin* v. *Foster,* 9 Pick. 341 ; *Drury* v. *Worcester,* 21 Pick. 44 ; *Bliss* v. *Deerfield,* 2 N. H. 512 ; *Rex* v. *Burr,* 13 Pick. 102 ; *Hobbs* v. *Lowell, supra,* 2 J. R. 424.

The action of the town by its authorities was a sufficient

acceptance of the way.   4 Camp. 16; *Rex* v. *Wriyht*, 3 B. & A. 681, and cases above cited.

Captain Adams being a surveyor *de facto*, his evidence was properly admitted without the production of his warrant, which was not in his possession.

The declarations of Benjamin and the directors of the company were competent evidence.   They were agents of the company to lay out streets, and their declarations were part of the *res gestœ*.   *Cincinnati* v. *White, supra*, 3 Stark. Ev. 1302; 1 N. H. 26; *Austin* v. *Foster*, 9 Pick. 341.

The indictment sufficiently sets forth the bounds of the way.   3 Chit. C. L. 378; *Commonwealth* v. *Hall & al.*, 15 Mass. 241.

PARKER, C. J.   We shall first inquire respecting the general principles applicable to this case when the indictment was found, and then consider the effect of the 7th sec., chap. 53, of the Revised Statutes.

It is objected that there can be no highway in this State except by a laying out under the statute; but it must be regarded as settled by several decisions in which a highway originating in dedication by the owner to the use of the public has been expressly recognized, that prior to the passage of the Revised Statutes such a way was a legal highway, subject to the general laws applicable to highways.   *State* v. *Campton*, 2 N. H. 513; *Barker* v. *Clark*, 4 N. H. 383; *Hopkins* v. *Crombie*, 4 N. H. 523; *State* v. *New-Boston*, 11 N. H. 407.

In order to constitute a highway in that mode, there must be a dedication or donation to the public of a right of passage.   A license to pass for a time is not sufficient. *Trustees of British Museum* v. *Finnis*, 5 Car. & Pay. 460; *Rex* v. *Hudson*, 2 Strange 895.   And the dedication must be by the owner, and not by a lessee for years or person having a limited right.   *Wood* v. *Veal*, 5 B. & Ald. 454; 5 Taunt. 126; *Marquis of Stafford* v. *Coyney*, 7 B. & Cres. 257.

The dedication may be proved by the express act of the owner. *Hobbs* v. *Lowell,* 19 Pick. 409 ; *Cincinnati* v. *White,* 6 Pet. 431. So it may be proved by some act indicating his intention to dedicate it, as fencing it in a manner suitable for a highway, and permitting the public to use, or any express act treating it as a highway. *Springfield* v. *County of Hampton,* 10 Pick. 67. So if the owner permit the land to be used as a public thoroughfare or passage for so long a time as to evince an intention to surrender a right of passage to the public, as where a road was laid but no damage awarded and seventeen years had elapsed. *Pritchard* v. *Atkinson,* 4 N. H. 9 ; 5 Car. & Pay. 460. Twenty years' user will be conclusive on this point without any thing further. *Williams* v. *Cummington,* 18 Pick. 312 ; *Valentine* v. *Boston,* 22 Pick. 75 ; *Rex* v. *Barr,* 4 Camp. 16. There are cases which show that use for a lesser time, even six years, is sufficient, but the soundness of this is questionable unless there are some circumstances connected with it to show assent. See *Woodyer* v. *Hadden,* 5 Taunt. 126, opinion of *Mansfield,* C. J. ; *Roberts* v. *Karr* and *Lethbridge* v. *Winter,* 1 Camp. 262, note.

In order to constitute a highway in this mode, there should be not only a dedication, but an acceptance or recognition of it by the public authority. *Hopkins* v. *Crombie,* 4 N. H. 523 ; *Green* v. *Chelsea,* 24 Pick. 80. It has been held in England, that there must be an acceptance or acquiescence by the parish. *The King* v. *St. Benedict Pr., Bayley,* J., 4 B. & Ald. 447 ; *The King* v. *Mellor,* 1 B. & Adol. 32 ; *The King* v. *Wright,* 3 B. & Adol. 681. In 5 Burr. 2597, it is said that the sessions approved of the bridge and contributed toward it. *Rex* v. *West Riding,* &c. But the rule before that time had been laid down, that if a man built a bridge and it becomes useful to the country in general, the county shall repair it. 5 Burr. 2597. And it seems since to have been held that the inhabitants of a parish are bound by law to repair all roads within it dedi-

cated to and used by the public, although there be no adoption of such roads by the parish. *The King* v. *Leake*, 5 B. & Adol. 469. But the highway in that case had been used more than twenty years, and was useful to the public.

Some of the cases speak of such a public use as shows the way to be of public utility, as being sufficient in connection with dedication to constitute a public highway. But this is somewhat loose, and the rule here may well follow the doctrine once held in England, that there must be an acceptance, which however may be shown by use for the period of twenty years, without objection. The selectmen having power to lay out, may accept by a direct record of acceptance, *Hopkins* v. *Crombie*, 4 N. H. 523, or by repairs or setting up of guide-posts, or any other official act of recognition.

The town upon which is the burden of repair may accept. Although a town has not the power to lay out a way in this State, the inhabitants elect the selectmen who are officers of the town, and as the town is required to repair highways, there seems to be no substantial objection to an acceptance by the town by an express vote of acceptance, or by a vote raising money to repair, or any other act recognizing an obligation to repair. If the way is one which does not require repairs, twenty years' use by the inhabitants and others without any objection by the town or its authorized agents, may furnish conclusive evidence of acceptance. Use for such a period might show the road of public utility. 5 Burr. 2598. It may also be evidence of a legal laying out. 3 N. H. 338, and authorities cited. And an acceptance or assent may be shown by the fact that the road dedicated has been substituted for an ancient highway, which has thereupon been permitted to go into decay and disuse. *Hobbs* v. *Lowell*, 19 Pick. 405.

It has been objected to this doctrine of dedication, that it would be a great hardship upon towns if an individual

could lay out a way upon his own land, throw it open to the public, and then oblige the town to charge themselves with the maintenance and repairs of it. 19 Pick. 410. But this rule requiring evidence of acceptance in some mode, relieves the case from any argument of that description. In fact, without a rule requiring acceptance, the highway could not be constituted by dedication against the express dissent of the authorities of the town. It has been said (in some cases) that an individual who throws open his land to the public use without authority, may be indicted, because if the public use the passage, the repair of it will become a public charge. There is something to countenance the position. 2 N. H. 514, and see 4 N. H. 13. That position however may perhaps be doubted. The authorities 2 N. H. 514 hardly sustain it. See 2 Chitty's Cr. Law 590, and 2 East 348, 351; 2 Black. 687. There seems to be no reason why public authorities may not by obstructing such public passage or by public notice of dissent, prevent any charge upon the public in any case of that description. There is no sufficient objection to highways of this character that there is no record of their limits. *Sprague* v. *Waite*, 17 Pick. 309; *Hannum* v. *Belchertown*, 19 Pick. 311.

It has been objected that if the common law respecting dedication of land for highways was in force in this State, it was repealed by the statute of February 27, 1786. But it is evident that that repeal was intended to embrace such statutes as had been passed upon the subject. It is entitled " An act for repealing sundry laws of this State relative to highways." See N. H. Laws (Ed. 1789), p. 60. The Legislature at that time revised the laws on that subject, and passed three acts bearing that date. There is no evidence of any intention to repeal any of the common law, except so far as the statutes covered the same ground.

It has been further contended that there is no statute in force for the repair of any highways but such as have

been laid out. Highways by dedication, are highways laid out within the meaning of that phraseology, which evidently is but another expression to designate existing public highways. But the statutes providing for the repair of highways from 1786 to the present time, speak of highways generally without any such addition.

It is further objected that there is an uncertainty in not alleging what particular part of the building is an encroachment upon the way. The statute of February 27, 1786, to prevent encroachment on highways, empowers the court upon conviction of the offender to order and cause such edifices, buildings, or fences, to be taken down, demolished, and removed, and further to punish the offender by fine not exceeding ten pounds and cost of prosecution. N. H. Laws (Ed. 1830), 581.

It seems to be necessary in order to a judgment of abatement, that the precise extent of the encroachment should be ascertained. If a fence, clearly no more is to be demolished than stands on the highway. And so of a building, it may not be necessary to demolish the whole.

Upon the question whether it is necessary to state the precise extent of the nuisance in the indictment, the authorities are contradictory. It was formerly held necessary. See Hawk., chap. 76, sec. 88. The better opinion seems to be that it is not. 2 Chitty's Cr. L. 339 [571]. If less than the whole building is on the highway, the extent may be found by the verdict. If the extent is stated, it need not be proved as laid. 2 Chitty 109.

Upon the present verdict there can be no judgment of abatement, and if that was essential in all cases, the verdict must be set aside for that reason. But it is apparent that this can not be so. The building or fence may be removed before trial, and then the judgment should be only for the fine and costs. And such is the general principle. The judgment in an indictment for a nuisance, may be by a fine and an abatement of the nuisance, if the

case require it. If not, it may be the former only. *Rex* v. *Pappineau*, 1 Strange 688; 2 Chitty's Cr. Law 374 [609], note.

But it is further objected that this prosecution can not be sustained, the Revised Statutes, chap. 53, sec. 7, having provided that no highway that has not been laid out agreeably to statute law, shall be deemed a public highway, unless the same has been used by the public for a term of not less than twenty years, &c. This provision can not have such a retrospective operation as to strike this way out of existence *ab initio*, if it was, prior to the passage of the act and when the prosecution was commenced, a public highway. It can not give a construction to the laws existing prior to its passage. That is not the province of legislation.

Nor can it defeat the prosecution itself, if otherwise well founded, because the sixth section of chap. 230 enacts that no offence committed or forfeiture incurred under any of the acts repealed by that chapter (among which is the act of February 27, 1786, under which this indictment was found), shall be affected by the repeal, except where the punishment or penalty shall be mitigated by the provisions of the Revised Statutes, those provisions may be extended to any judgment to be pronounced after the repeal. Rev. Stat. 475.

But the Legislature have power to discontinue highways, and the seventh section of chap. 53, which has been cited, must operate as a discontinuance of all highways by dedication which have not been used by the public for the term of twenty years. They shall not be deemed public highways. There is then an end of them as such. Its operation upon this case is the same that must have resulted from any other discontinuance of the way. The prosecution may still proceed and a fine be imposed for the encroachment, if the land had been dedicated as a highway and the defendant's building was within the lim-

its of it when the indictment was found. Thus far the repealing clause to which we have adverted saves the prosecution, but there can be no judgment of abatement because there is no longer a highway there.

It remains to inquire respecting the rulings and instructions at the trial.

The Nashua Manufacturing Company owned the land. There is no evidence of any express dedication by vote or direct act of the company. But the case finds, that " Mr. Benjamin was the principal agent of the company, and that his first business was to lay out the grounds of the company in order to dispose of them ; and that under his direction sundry plans were made having streets laid out upon them." There seems to be no doubt from this, that Benjamin was entrusted with the power to lay out streets, or in other words to lay out and dedicate land for streets or highways in the property of the company.

The prosecution relies upon his act, and there is evidence from Boardman that under the direction of Benjamin he staked out the street upon which the nuisance is now alleged. There is some other evidence having a tendency to support this. If this evidence is correct, there was an express dedication by an authorized agent of the company. It is controverted by the evidence of Benjamin and others, and was a matter for the jury.

Under the instructions the jury must be understood to have found this a highway of public utility, if that is a necessary ingredient. It may be questionable whether it is so where an acceptance is shown.

The next question is, whether there was sufficient evidence on which the jury might find an acceptance. If so it was an acceptance by the selectmen. The vote of the town relative to the bridge contains no recognition of it. There is evidence of the acts of several of the selectmen in different years, directing repairs to be made upon the place in question as if it were a part of Clinton street, but

a recognition of it as a highway by a majority of the selectmen is necessary to an acceptance, and it does not appear very distinctly that a majority of the selectmen in any one year gave any directions respecting it, or that there is any thing from which the assent of the others can be inferred to the direction given by one of their number respecting the work done upon it. The acceptance of a way dedicated by the owner of the land, is not one of those ordinary duties which if one performs the duty the assent of the other is to be inferred without further evidence within the principle.

Nor can the several acts of one selectman in one year and the act of another selectman in another year, be coupled together so as to show an acceptance by a majority of the board in either year. As the case must go to another trial, it is not necessary to examine the evidence in detail upon this point. It is sufficient to state the principle, that there should be the actual concurrence of a majority of the selectmen in the act of acceptance, or the circumstances should be such that the actual concurrence of a majority can be inferred as a matter of fact by a jury.

The defendant objected at the trial to the admissibility to that part of the testimony of P. Adams which stated what streets were embraced in his warrant, without the production of the warrant. It appeared that the warrant had been returned to the selectmen, and there was no evidence of its loss, nor any reason stated why it was not produced. It was of itself the best evidence what streets were included within the limits assigned to the surveyor, and his evidence of its contents was therefore inadmissible on well settled principles. The defendant also objected to the admissibility of the declarations of certain persons who were in the employ of the company, that there was a street over the place in question, and it is clear that some portion of this testimony is inadmissible,

As agents of the company they were not authorized to make them. The company only dedicated the street.

Several witnesses testify to the declarations of the agent of the Nashua Company, and of individual directors of that company, at different times, tending to show that Clinton street extended so far as to cover the ground now in question. This is for the purpose of showing the dedication. But the agent and directors were not then engaged in laying out the street, or in doing any act which is supposed to relate to the dedication. The farthest which the evidence goes, is to show that the agent in one instance and individual directors at other times to which the evidence relates, were engaged in selling or leasing lands bounding on Clinton street, but not upon the place now in question. It may admit of doubt at least whether any of this evidence is admissible. The *res gestæ* was the sale or leasing of lands. The declarations relate not to those lands or the boundaries of them, or the rights of way directly to or from them. The utmost extent to which the testimony goes is, that if admitted it will tend to show the extent of the street which passed by these lands. At the time when these declarations were made, the individual officers of the company who made them do not appear singly to have had the power of dedication. They all seem to relate to what had passed.

The rules which must govern this part of the case are laid down in Story on Agency. "When the acts of the agent will bind the principal, then his representations, declarations, or admissions, respecting the subject matter, will also bind him, if made at the same time and constituting part of the *res gestæ*." Story on Agency, sec. 134. "The representation, declaration, or admission, of the agent does not bind the principal, if it is not made at the very time of the contract, but upon another occasion, or if it does not concern the subject matter of the contract, but some other matter in no degree belonging to the *res gestæ*."

Story on Agency, sec. 135. " The mere assertion of a fact can not amount to proof of it, though it may have some relation to the business in which the person making that assertion was employed as agent." Story on Agency, sec. 136. See also 1 Greenl. Ev., secs. 113, 114 ; *Barker* v. *Clark*, 4 N. H. 384.

Undoubtedly the declarations of the individual officers of the company respecting the subject matter upon which they were then acting by the authority of the company, would be admissible for the purpose of giving a character to or showing the extent of what was done, and thus to bind the company and through the company those who claimed the subject matter under the company by a subsequent sale. But the subject matter we have seen was the sale or lease of lands which were not immediately connected with the dedication of this part of Clinton street, if it be a part.

It is not material however to determine whether any of these declarations are admissible, for in one instance it does not appear that the director whose declaration is introduced was engaged in any business of the company at the time he made it ; and in another instance there is the declaration of a mortgager of land, which perhaps bounded some where on Clinton street, to his mortgagee tending to show the extent of the street. It is very clear that this is mere hearsay testimony and as such it is as clearly inadmissible.

*Verdict set aside.*