Rockingham
No. 2004-525

ACG CREDIT COMPANY, LLC

v.

MELANIE GILL & a.

Argued: April 5, 2005
Opinion Issued: May 23, 2005

*Nixon Peabody LLP*, of Manchester (*Jamie N. Hage* and *Gordon J. MacDonald* on the brief, and *Mr. Hage* orally), for the plaintiff.

*Wadleigh, Starr & Peters, P.L.L.C.*, of Manchester (*Richard Thorner* on the brief), and *Ropes & Gray LLP*, of Boston, Massachusetts (*Kevin M. Cuddy & a.* on the brief, and *Mr. Cuddy* orally), for the trustee defendant.

DALIANIS, J. Northeast Auctions by Ronald Bourgeault, LLC (Northeast Auctions), the trustee defendant, appeals an order of the Superior Court (*T. Nadeau*, J.) upholding an attachment by the plaintiff, ACG Credit Company (ACG Credit), of certain antiques in the possession of Northeast Auctions. We affirm.

The following facts were uncontested by ACG Credit. On or about October 18, 2003, Northeast Auctions and defendant Melanie Gill entered into an agreement by which Northeast Auctions would take possession of various antiques belonging to Gill. Northeast Auctions agreed to auction the antiques and give the proceeds to Gill. Northeast Auctions waived its seller's commission, but would earn a "buyer's premium" on each item sold, payable by the purchaser at auction. Northeast Auctions gave Gill an advance of $500,000 of the anticipated auction proceeds, and agreed to pay Gill any proceeds exceeding that amount. In addition, Northeast Auctions assumed the risk of loss in the case that the auction failed to generate the amount of the advance.

On March 3, 2004, ACG Credit obtained an *ex parte* attachment on the antiques, belonging to Gill, which were in the possession of Northeast Auctions. Northeast Auctions was consequently enjoined from selling any of the items owned by Gill. Northeast Auctions objected to the attachment

and temporary restraining order. In its response to interrogatories in its trustee disclosure form, Northeast Auctions asserted that it possessed a security interest in the antiques. In support of its position, Northeast Auctions submitted affidavits from Gill and Ronald Bourgeault, the principal of Northeast Auctions.

ACG Credit objected to the disclosure form and moved to strike Northeast Auctions' objection to the attachment on the grounds that Northeast Auctions lacked standing, and had not created a valid security interest in the antiques. Gill never objected to the attachment, and has not entered an appearance in this matter.

After a hearing, the trial court found that Northeast Auctions, as trustee defendant, lacked standing to object to the attachment. Notwithstanding that finding, the trial court addressed the merits of the claim, and found that the transaction between Gill and Northeast Auctions had not created a valid security interest. The court found, instead, that the agreement was a consignment agreement, Northeast Auctions having taken the goods to sell them at auction on Gill's behalf and *not* to secure a loan to Gill. The court stated: "Finally ... the Uniform Commercial Code requires a security agreement to be in writing and express the parties' intention to create a security interest in the property before the agreement can be enforceable against third parties."

On appeal, Northeast Auctions argues that the trial court erred by finding it lacked standing to contest the attachment. Northeast Auctions also argues that the trial court erred in holding that the Uniform Commercial Code (UCC) requires security agreements to be in writing. In addition Northeast Auctions makes several arguments about the validity and perfection of its security interest.

We begin by addressing the trial court's holding that Northeast Auctions lacked standing to object to the attachment. The material facts are not in dispute; only their legal effect is in dispute. *Coyle v. Battles*, 147 N.H. 98, 102 (2001). The issue of standing is, therefore, a question of law, which we review *de novo*. *In re 1994 Chevrolet Cavalier*, 142 N.H. 705, 707 (1998).

ACG Credit argues that only the plaintiff and defendant may object to a trustee disclosure, according to the Trustee Process statute, RSA chapter 512. *See* RSA 512:18-a (Supp. 2004). Ordinarily, ACG Credit would be correct, because the trustee would have no independent interest in the subject property. In this case, however, Northeast Auctions is more than a mere trustee defendant; it claims an interest in the property at stake.

Trustee defendants receive a trustee disclosure form when they receive the writ of attachment and summons from the plaintiff. RSA 512:3 (Supp. 2004). Trustee defendants must answer the interrogatories on the trustee

disclosure form and return it to the plaintiff, or else face default, the effect of which may render them chargeable for a sum up to the amount of the judgment. *Id.*; RSA 512:10-:11 (Supp. 2004). "Return of the trustee disclosure form shall operate as an answer and an appearance on behalf of the trustee." RSA 512:3.

Northeast Auctions returned the trustee disclosure form, and, thus, entered an appearance in this matter. In answering the interrogatories on the trustee disclosure form, Northeast Auctions claimed its rights in the antiques and asserted that Gill was not the sole owner.

The interrogatories on the trustee process form are clearly designed to reveal the interests of third parties in the defendant's goods.

> If . . . it appears that the property for which the trustee is sought to be charged is claimed by a third person, he shall, on motion and upon such terms as the court may order, be admitted to defend his right, and may offer any evidence in support thereof.

RSA 512:26 (1997); *see also* 4 R. WIEBUSCH, NEW HAMPSHIRE PRACTICE, CIVIL PRACTICE AND PROCEDURE § 17.70, at 421 (1997). "If a claimant under RSA 512:26 does not appear, the court may order notice to be given to him personally, if practicable, otherwise by publication and in such other manner as the court deems proper, to appear and maintain his claim or be forever barred therefrom." RSA 512:27 (1997). A third party claimant who has an interest in the property at issue may file a motion to intervene or be called upon to appear to protect his interest in the property.

The distinctive factor in this case is that the third party asserting an interest in Gill's goods is the trustee defendant in possession of them. Northeast Auctions has already entered an appearance by virtue of its return of the trustee disclosure form. RSA 512:3. We see no reason to require a separate motion to intervene simply because Northeast Auctions' current presence in this case is as a trustee defendant. We hold, therefore, that Northeast Auctions by its appearance, and its asserted interest in the goods in question, has standing to object to the attachment.

Next, we address the issues surrounding the transaction. Northeast Auctions argues: (1) that the trial court erred in holding that the UCC requires security agreements to be in writing; (2) that it had a valid security agreement with priority over the interest of ACG Credit; (3) that the trial court erred by allowing ACG a greater interest in the goods than Gill herself possesses; and (4) that the trial court erred by ignoring the affidavits submitted by Gill and Bourgeault.

We first note that the trial court's order does not rely upon its conclusion that a security agreement must be in writing to be valid. The

paragraphs quoted below constitute the substance of the trial court's ruling, and make no mention of a written or oral security agreement. While the trial court's order states that the UCC requires a security agreement to be in writing, if that were to be deleted, the substance of the trial court's ruling would remain the same. Since the issue of whether a security agreement may be oral was not dispositive, we see no need to address it.

Instead, the dispositive issue is whether Gill and Northeast Auctions created a security interest as defined by the UCC. We review the trial court's application of the law to the facts *de novo*. *Coyle*, 147 N.H. at 100. The trial court found that the agreement between Gill and Northeast Auctions was "essentially a consignment agreement." The trial court stated:

> That the trustee defendant agreed to make a guaranteed payment up-front does not convert the consignment agreement into a security interest in the goods delivered. Indeed, there is no indication in the consignment agreement that the parties intended to create a security interest in the property.
>
> ... Moreover, the Code defines a security interest as "an interest in personal property or fixtures which secures payment or performance of an obligation." ... *In this case, the trustee defendant's possession of the antiques was not to secure a payment or performance of the defendant's obligation to the trustee defendant.* On the contrary, the goods were delivered to the trustee defendant as an auctioneer for the purpose of selling the items on behalf of and for the benefit of the defendant.

(Citation omitted.) We agree with the trial court's reasoning.

Northeast Auctions argues that the transaction was not a consignment agreement, but instead a security agreement creating a valid, perfected security interest. It claims that the factual elements necessary to establish a security agreement are undisputed. But in its brief, while Northeast Auctions sets out the elements necessary for an enforceable security interest—that value has been given, the debtor has rights in the collateral and the collateral is in the possession of the secured party, RSA 382-A:9-203(b) (2004)—it ignores the statutory definition of a security interest. A security interest is "an interest in personal property or fixtures which secures payment or performance of an obligation." RSA 382-A:1-201(37). The transaction between Gill and Northeast Auctions did not create a security interest, because there was no underlying obligation. Gill was not in debt to Northeast Auctions; she was under no obligation to repay the money advanced to her for the sale of the antiques. In fact, Northeast

Auctions assumed the risk of loss if the auction failed to generate the amount of the advance. It was not a loan but a consignment agreement. No amount of legal artistry can alter this result.

█ A security agreement is an agreement "that creates or provides for a security interest." RSA 382-A:9-102(73) (2004). The parties cannot have a valid security agreement without a corresponding security interest. Since Gill and Northeast Auctions did not create a security interest when they structured their transaction, their agreement is not a security agreement. Questions of its perfection and priority over ACG Credit's attachment, therefore, need not be addressed.

Northeast Auctions next argues that the trial court erred by allowing ACG Credit greater rights in the goods than Gill herself possesses. To the extent that, by this argument, Northeast Auctions attempts to assert Gill's rights in the goods, we hold that it does not have standing to assert the rights of another. *See Hughes v. N.H. Div. of Aeronautics*, 152 N.H. 30, 35-36 (2005). To the extent that Northeast Auctions asserts it has an interest, apart from a security interest, in the goods in question that is superior to ACG Credit's interest, we find that this argument is not sufficiently developed for our review, and we decline to devote appellate resources to it. *Trachy v. LaFramboise*, 146 N.H. 178, 181 (2001).

Finally, Northeast Auctions asserts that the trial court erred by ignoring the affidavits submitted by Gill and Bourgeault. We find no inconsistency between the affidavits submitted and the trial court's order that would indicate that it ignored the affidavits. In fact the trial court clearly incorporated into its order facts found only in the affidavits, for example, the $500,000 advance, of which no mention appears in the consignment agreement. However, accepting the facts offered in the affidavits does not change the result that the transaction between Gill and Bourgeault did not create a security interest. Therefore, we find no error in this regard.

*Affirmed.*

BRODERICK, C.J., and DUGGAN and GALWAY, JJ., concurred.