Rockingham
No. 2007-097

MICHAEL E. GILL & a.

v.

STEPHEN G. GERRATO & a.

Argued: November 8, 2007
Opinion Issued: December 20, 2007

*Backus, Meyer, Solomon & Branch, LLP*, of Manchester (*Steven Solomon* on the brief and orally), for the plaintiffs.

*Anthony S. Hartnett*, of Dover, by brief and orally, for the defendants.

GALWAY, J. The defendants, Stephen G. and Phyllis G. Gerrato, and Andrew M. and Cynthia L. Birse, appeal the decision of the Trial Court (*Morrill*, J.) ruling that a lane running through their respective properties is a class VI highway. We affirm.

This is the second time this matter has come before us. The facts are set forth in our previous decision, *see Gill v. Gerrato*, 154 N.H. 36 (2006). For purposes of this appeal, we recite the pertinent facts and procedural background below.

The lane at issue extends from Route 151, previously known as Old Post Road or Post Road, through the defendants' respective properties, extending at least as far as the property of the plaintiffs, Michael E. and David M. Gill. *Id.* at 37. In its first decision, dated October 7, 2004, the trial court concluded that the Gills possessed an express easement to use the lane for all residential and agricultural uses and to install utility services. *Id.* at 38. In addition, the trial court found that the lane had been a public road in the 1700s, but had "probably" been abandoned. *Id.* at 38-39. On appeal, we reversed the trial court's ruling that the Gills had an express easement, and remanded for further determinations regarding the status of the lane as a public road. *Id.* at 41-42.

On remand, the trial court determined that "[t]he road from Route 151 to the former Weeks Mill was laid out as a public highway in the early 1700's and, if not, was continuously and adversely used by the public for well over twenty years during the 1700's creating a public road." The trial court also ruled that there was no evidence that the road was ever officially discontinued, and the court designated its status as a class VI highway. Additionally, the trial court ordered that the Gordons, not parties to this appeal, remove the portion of their garage which encroached upon the road. This appeal followed.

■ The defendants' primary argument is that the trial court's decision on remand is not supported by the evidence and is internally inconsistent with its October 7, 2004 decision. We disagree. In New Hampshire, a public road may be created in several ways, including by prescription. *See Mahoney v. Town of Canterbury*, 150 N.H. 148, 150 (2003). "To establish a highway by prescription, it must appear that the general public used the way continuously without interruption for a period of twenty years prior to 1968, under a claim of right without the owner's permission." *Id.* "In addition to demonstrating public use for twenty years, the party claiming an easement by prescription must also prove that the public use was adverse." *Id.* Whether a highway is created by prescription is a finding of fact. *Id.* We will be bound by the trial court's findings unless they are not supported by the evidence or are erroneous as a matter of law. *Id.*

Here, the trial court ruled that the lane was a public highway by prescription, finding evidence of both its existence and adverse use. In its October 7, 2004 order, the trial court found the earliest reference to the lane to be in a 1713 deed, in which the Commissioners of Portsmouth

conveyed a parcel of land to John Lang utilizing the "road from the 'high (Post) road' to Weeks Mill" as its southerly boundary. The court also noted that several deeds, including the 1723 conveyance of land to Mary Haines, made clear reference to the lane as a road. At least one of these deeds describes the lane as the road to the Weeks old saw mill. Additionally, the trial court observed that "[a]ll of the historical maps introduced by both sides show a lane . . . leading from the Whidden/Berry/Jones residence to what is now Route 151," although public use appeared to have ended by 1806.

We held in *Mahoney* that the inclusion of a road in deeds indicates use by people other than the owners of the land through which the road runs. *Mahoney*, 150 N.H. at 151. The inclusion of the lane on "all the historical maps introduced by both sides" is also competent evidence to support the inference of use of the lane. *Id.* In addition, there was testimony from the plaintiffs' land survey expert supporting the existence and adverse use of the lane as a public road. Moreover, the trial court found that the archeological remnants of the stone walls lining the lane and the foundation of the Weeks Mill supported its determination that the lane was a public road. "Where a wall has been erected on either or both sides of a road, its evidentiary value is important." *Blagbrough Family Realty Trust v. A&T Forest Prods.*, 155 N.H. 29, 36 (2007) (quotations omitted). Thus, there is sufficient evidence of regular and consistent public use of the lane from at least 1714 to the late 1700s.

Whether a use of property is adverse is an issue of fact. *Mahoney*, 150 N.H. at 152. "A claimant must initially produce evidence of acts of such a character as to create an inference that the claimant adversely used the landowner's property; that is, used it without permission." *Id.* Here, the trial court found the public's use of the lane to be adverse, noting the lane led to the Weeks Mill, an "oft-mentioned commercial enterprise." In this case, use of the lane to access a commercial entity is of such a character as to create an inference that the lane was used adversely by the public for at least a twenty-year period. *See id.* at 152. Therefore, we affirm the trial court's finding of a public road by prescription.

In the alternative, the trial court found that the lane had been laid out as a public highway by the Commissioners of Portsmouth in the early 1700s, and inferred both dedication and acceptance from the public's use of the road for twenty years without objection. The evidence, as described above, supports these findings. *See Webster v. Boscawen*, 67 N.H. 111, 113 (1891) (recitals in ancient records and grants is competent evidence of

laying out); *State v. Atherton*, 16 N.H. 203, 209-10 (1844) (dedication and acceptance may be inferred by public use).

The defendants argue that, if the lane was a public road, it was discontinued pursuant to Revised Statute 53:7 of 1842, which provides:

> No highway that has not been laid out agreeably to statute law, shall be deemed a public highway, unless the same has been used by the public for a term of time not less than twenty years, and no highway thrown open to the public, the use of which would not be necessary for public travel ... shall ever be deemed a public highway unless the same shall be laid out agreeably to statute law.

The defendants assert this statute was intended to discontinue "old routes" which had not been used in the twenty years immediately preceding the passage of this law. We disagree. In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole. *Green Meadows Mobile Homes v. City of Concord*, 156 N.H. 394, 395 (2007). We look first to the statutory language itself, and where possible, we ascribe the plain and ordinary meanings to words used. *Id.*

 Contrary to the defendants' assertion, the enactment of RS 53:7 did not discontinue all roads not then being used by the public, regardless of their otherwise established status as public highways. Rather, the plain language demonstrates a prospective intent to clarify what is required for a public highway, if it did not already exist. *See Atherton*, 16 N.H. at 213. In *Atherton*, we held that RS 53:7 cannot "have such a retrospective operation as to strike [a road] out of existence *ab initio*, if it was, prior to the passage of the act ... a public highway." *Id.* Here, the lane was established as a public highway after twenty years of adverse public use, well prior to this 1842 legislation. Accordingly, RS 53:7 is inapplicable here.

The defendants also invite us to create a rule providing for judicial discontinuance of public highways under these circumstances. We decline the invitation. The law surrounding discontinuance of a road is well-established. As we noted in *Gill*, New Hampshire has a "longstanding rule of law that an established public highway cannot be discontinued simply by lack of use." *Gill*, 154 N.H. at 42. Further, "[b]ecause public roads are discontinued by town vote, and such actions are recorded, the best evidence of discontinuance is the official record." *Blagbrough Family Realty Trust*, 155 N.H. at 37 (quotations and ellipsis omitted). The burden is upon the party asserting discontinuance to prove it by clear and

satisfactory evidence. *Id.* We decline to revisit these well-established rules here. If the legislature wishes to create a statutory mechanism for discontinuance of ancient roads that have not been used as roads for many years, it is free to do so.

The defendants next assert that the trial court has imposed a servitude upon the land of non-party abutters, thus depriving them of private property without due process of the law. In addition, they argue that the trial court's order regarding removal of the Gordons' garage is preempted by contrary orders of the Greenland Planning Board. To the extent that the defendants attempt to assert the rights of the Gordons or non-party abutters, we conclude they do not have standing to assert the rights of another. *See ACG Credit Co. v. Gill*, 152 N.H. 260, 264 (2005). To the extent the defendants assert some interest in the removal of the garage, we find the argument is not sufficiently developed, and we decline to devote appellate resources to it. *Id.* Lastly, because of the finding that a class VI highway exists, we need not address the defendants' argument regarding the prescriptive easement.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, DUGGAN and HICKS, JJ., concurred.