# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2013-0823, <u>David Blair & a. v. Penny A. Keough & a.</u>, the court on February 11, 2015, issued the following order:**

Having considered the briefs and oral arguments of the parties, the court concludes that a formal written opinion is unnecessary in this case. The petitioners (David Blair, Raymond Bollerud, Kathleen Bollerud, Lawrence J. Evon, Patricia Evon, Charles Faucher, William J. Feller, Michele D. Feller, Fritz Goss, Kathleen Goss, Susan Holland, George M. Lowrey, Bonnie M. Lowrey, Lynne McEwan, Paul Meneghini, Julie Meneghini, Kully Mindemann, Carolyn E. Page, Gordon L. Page, Gail Page, Grayson L. Parker, Jimmie D. Patton, Judith K. Patton, Winston Sims, David Sobel, Richard V. Taylor, Linda A. Taylor, Margaret E. Ward, John L. White, and Pamela Worden) appeal an order of the Superior Court (<u>Kissinger</u>, J.) denying their petition for declaratory judgment that the public has acquired a prescriptive easement to use a path located on the property of the respondents, Penny A. Keough, Carl H. Keough, and Jane M. Keough. We affirm.

The following facts are recited in the trial court's order, drawn from the record, or are otherwise undisputed. The respondents own two parcels of land in Harrisville located on or near Lake Skatutakee. The second parcel (parcel 2) is at issue in this case. Parcel 2 was deeded to the respondents' predecessor-in-interest, Floyd Keough, on September 7, 1948, by the Boston and Maine Railroad Corporation (Boston and Maine Railroad). The disputed portion of parcel 2 is a former Boston and Maine Railroad right-of-way (path), which includes most of the respondents' driveway and ultimately reaches Hancock Road. Crossing Parcel 2 is essential to circumnavigate Lake Skatutakee.

Respondents Carl and Penny Keough are the current owners of parcel 2. At some point, they installed ropes to prevent public access to the path; however, the ropes were eventually removed without their permission. Subsequently, the town installed a "private sign," but it later was found in the woods and ultimately disappeared.

On April 14, 2011, the petitioners brought this action for declaratory judgment against the respondents seeking an order that parcel 2 "'is burdened by a public footpath for walking, bicycling, horseback riding and other human powered activities such as cross-country skiing and snowshoeing.'" They asserted that the public has obtained a prescriptive right to use the path. The respondents objected and argued that, by seeking to establish a public easement by prescription on the path, the petitioners were, in fact, seeking to

establish a public highway and, as a result, the restrictions in RSA 229:1 (2009) and RSA 367:45 (2009) applied to their claim. They contended that the petitioners' prescriptive easement claim failed because the petitioners could not demonstrate twenty years of prescriptive use of the path. They further contended that the petitioners' claim failed because the respondents had expressly or implicitly consented to the public's use of the path.

The court conducted a bench trial, during which numerous witnesses testified regarding their use of the path dating back to the 1940s. Following the trial, the court issued an order ruling that the petitioners had met their burden of establishing an adverse use of the path. Nonetheless, the court found that the petitioners had not established twenty years of continuous use. The court agreed with the respondents that the petitioners were seeking a public highway by prescription and, therefore, RSA 229:1 applied to the petitioners' claim. RSA 229:1 provides that a public highway may be established by prescription if used for public travel for twenty years prior to January 1, 1968. See Mahoney v. Town of Canterbury, 150 N.H. 148, 150 (2003). The court determined that RSA 367:45, prohibiting title by adverse possession against a railroad, prevented the prescriptive easement period from beginning to run until September 7, 1948, the date Floyd Keough was deeded the property. As a result, the court concluded that the petitioners' prescriptive easement claim failed because they could not demonstrate twenty years of adverse use prior to January 1, 1968, as required under RSA 229:1. This appeal followed.

On appeal, the petitioners argue that the trial court erred by ruling that they are seeking to establish a public highway under RSA chapter 229 and, as a result, erroneously applied RSA 229:1 to their claim. They further contend that RSA 367:45 does not apply because there was no railroad in Harrisville at the time parcel 2 was conveyed to Floyd Keough in 1948.

We begin by looking at the nature of the prescriptive easement the petitioners seek to obtain because "[t]he rights of any person having an easement in the land of another are measured and defined by the purpose and character of the easement." 25 Am. Jur. 2d Easements and Licenses § 71 (2004). When making a claim for a prescriptive easement, it is not enough to claim a right to cross or invade "the owner's property generally, but rather, [the claim] must be for a definite, certain and particular line of use." Sandford v. Town of Wolfeboro, 143 N.H. 481, 490 (1999) (quotation omitted); see also Vigeant v. Donel Realty Trust, 130 N.H. 406, 408 (1988). "The scope of a prescriptive easement is defined by the character and nature of the use that created it." Sandford, 143 N.H. at 490 (quotation omitted).

Here, the petitioners alternately characterize the nature of the easement as a "public footpath" and "public path." In their petition, they claimed that the public has a prescriptive easement over the path for the particular purpose of "'walking, bicycling, horseback riding and other human powered activities

2

such as cross-country skiing and snowshoeing.'" Thus, the petitioners seek a path over parcel 2 that is open for use by the public. Put another way, the nature of the prescriptive easement that the petitioners seek to obtain is a public way. See Black's Law Dictionary 1730 (9th ed. 2009) (defining "way" as "[a] passage or path" and "[a] right to travel over another's property").

The parties dispute whether the public way the petitioners seek constitutes a highway under RSA chapter 229. Resolution of this issue requires us to engage in statutory interpretation. We review the trial court's interpretation de novo. See Gordon v. Town of Rye, 162 N.H. 144, 150 (2011). "We are the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole. When examining the language of a statute, we ascribe the plain and ordinary meaning to the words used." Id. (quotation omitted). "We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. We interpret a statute in the context of the overall statutory scheme and not in isolation." Id. (quotation omitted).

RSA 229:5 (2009) sets out and defines the classes of highways in this state, dividing the highways into seven classes. See King v. Town of Lyme, 126 N.H. 279, 283 (1985). Of the seven possible statutory highway classifications, only Class VI is relevant to this case. RSA 229:5, VII defines Class VI highways, in pertinent part, as "all other existing public ways." (Emphasis added.) Here, because the nature of the easement the petitioners seek is a public way, it follows that they are, in fact, seeking a Class VI highway. See RSA 229:5, VII.

The petitioners argue that the legislative history of RSA chapter 229 supports their contention that the "footpath" they seek does not constitute a highway and that RSA 229:5 contemplates no more than "motor vehicle routes." Because we do not read RSA 229:5, VII to be ambiguous, we need not consider the legislative history offered by the petitioners in their brief. See Clare v. Town of Hudson, 160 N.H. 378, 384-85 (2010).

Moreover, our conclusion that the petitioners are seeking a Class VI highway is consistent with the common law definition of highways as "comprehend[ing] every public thoroughfare, whether road or sidewalk, with its soil and all the space above it." State v. Scott, 82 N.H. 278, 278-79 (1926) (citation omitted); see also 39 Am. Jur. 2d Highways, Streets, and Bridges § 1 (2008) ("'Highways' may be defined as public ways; that is, they must provide a way over which the public has a general right of passage. The term 'highway' is generic and includes all public roads and ways." (footnotes omitted)).

> At common law the term "highway" was a broad term
> encompassing all sorts of rights of way for public travel. . . .
> "Every thoroughfare which is used by the public, and is, in the
> language of the English books, 'common to all the king's subjects,'

3

is a highway, whether it be a carriage-way, a horse-way, a foot-
way, or a navigable river."

Utah Wilderness v. Bureau of Land Management, 425 F.3d 735, 782 (10th Cir.
2005).  Therefore, our interpretation of RSA chapter 229 as encompassing the
path the petitioners seek to obtain in this case is consistent with our holdings
that we will not interpret a statute to abrogate the common law unless the
statute clearly expresses that intent.  See Case v. St. Mary's Bank, 164 N.H.
649, 655 (2013).  If the legislature wishes to eliminate the inclusion of such a
path within the definition of state highways, it must do so clearly and explicitly.
See Estate of Gordon-Couture v. Brown, 152 N.H. 265, 271 (2005).

The petitioners further point to certain provisions in RSA chapter 265
relating to pedestrians' rights and duties in support of their argument that the
path does not constitute a highway.  RSA chapter 265, however, was enacted
as part of the motor vehicle laws and is a distinct body of law that governs the
operation of motor vehicles and establishes the rules of the road.  See State v.
Fitzgerald, 137 N.H. 23, 27 (1993).  Specifically, the provisions cited by the
petitioners govern pedestrians' rights and duties in relation to rules of the road
for motor vehicles.  See RSA 265:36 (2014) ("Crossing at Other Than
Crosswalks"); RSA 265:39 (2014) ("Pedestrians on Roadway").  These statutes
do not affect our analysis of whether the path the petitioners seek in this case
is, in fact, a highway under RSA chapter 229.

To the extent that the petitioners raise a challenge under our State
Constitution, there is no evidence in the record before us on appeal that the
petitioners raised this issue before the trial court.  Therefore, we conclude that
this issue has not been preserved for our review.  See State v. Matton, 163 N.H.
411, 415 (2012).  Accordingly, we hold that the trial court did not err in
determining that the path the petitioners seek constitutes a public highway
and that, therefore, RSA 229:1 applies to their claim.

Under RSA 229:1, a public highway may be created in several ways,
including by prescription.  Gill v. Gerrato, 156 N.H. 595, 596 (2007).  To
establish a highway by prescription, it must appear that the general public
used the way continuously without interruption for a period of twenty years
prior to January 1, 1968, under a claim of right without the owner's
permission.  See id.; RSA 229:1.  Whether a highway is created by prescription
is a finding of fact.  Gill, 156 N.H. at 596.  We are bound by the trial court's
findings unless they are not supported by the evidence or are erroneous as a
matter of law.  Id.

Here, the trial court ruled that, under RSA 367:45, the adverse
possession period against the respondents could not begin to run until after
the Boston and Maine Railroad deeded the property to Floyd Keough on
September 7, 1948.  Since the petitioners could not establish adverse use for
twenty years prior to January 1, 1968, the court found that the path was not a

4

public highway by prescription and, therefore, their prescriptive easement claim failed.  The petitioners contend that this was error because RSA 367:45 does not apply to this case.  We agree with the trial court.

RSA 367:45 provides that "[n]o title to any real estate or to any interest therein shall be acquired by or against a railroad by adverse possession, however exclusive or long continued."  The petitioners maintain that, although the Boston and Maine Railroad may have owned the deeded parcel prior to conveyance on September 7, 1948, it no longer operated an active railroad line on the land.  As a result, they contend that the Boston and Maine Railroad "was merely a property owner and the purpose of the statute to protect the railroad from a claim of adverse possession should only apply to an active railroad."

RSA 367:45 does not distinguish between real estate or interests therein currently used in connection with an active railroad line and land which the railroad owns, but on which it no longer operates an active railroad line, or which the railroad may have abandoned.  The plain language of the statute prohibits an adverse possession claim against "any real estate or . . . any interest therein" owned by a railroad.  RSA 367:45 (emphases added).  We will not consider what the legislature might have said nor add words that it did not see fit to include.  See Gordon, 162 N.H. at 150.  We conclude, therefore, that the trial court did not err by applying RSA 367:45 to the petitioners' prescriptive easement claim and thereby determining that the petitioners failed to establish twenty years of prescriptive use of the path prior to January 1, 1968, as required under RSA 229:1.

Affirmed.

DALIANIS, C.J., and HICKS, CONBOY, and BASSETT, JJ., concurred.

**Eileen Fox,
Clerk**