Merrimack
No. 89-533

BARRY W. LUSSIER & a.

v.

NEW ENGLAND POWER COMPANY & a.

December 28, 1990

*Branch & Greenhalge P.A.*, of Concord (*Frederic T. Greenhalge* on the brief and orally), for the plaintiffs.

*Orr & Reno P.A.*, of Concord (*Richard B. Couser* and *Lisa Snow Wade* on the brief, and *Mr. Couser* orally), for the defendant.

BROCK, C.J. The plaintiffs, Barry and Emma Lussier and Robert and Kathleen Anderson, appeal from two superior court decisions that determined the rights of the defendant, New England Power Company and its affiliate, New England Hydro-Transmission Corporation (hereinafter collectively referred to as New England Power), under express easements crossing the plaintiffs' adjoining properties. The plaintiffs sought a determination of New England Power's right to construct a third transmission line on and across the plaintiffs' properties. Additionally, the Lussiers argued that construction of an existing electrical switching station, known as the "Dunbarton Junction," constitutes inverse condemnation of their property requiring reasonable compensation.

On May 9, 1989, in a decision approving a Master's (*Louie C. Elliott*, Esq.) recommendation, the Superior Court (*Contas*, J.) ruled that the easement deeds held by New England Power permitted the construction of the third transmission line. Subsequently, on October

27, 1989, the Superior Court (*Mangones*, J.) ruled on New England Power's motion for summary judgment and found that construction of the Dunbarton Junction was also a permitted use of the easement. The plaintiffs argue that both rulings are in error in that the new transmission line and the Dunbarton Junction are unreasonable uses under the terms of the easements. They also argue that the Superior Court (*Flynn*, J.) abused its discretion when it denied their request for a jury trial. For the following reasons, we affirm.

Early in the proceedings below, the parties sought to transfer the cases to this court on an interlocutory basis, *see* SUP. CT. R. 9, on stipulated facts. By order issued on January 19, 1989, in No. 89-001, we declined the transfer, *see* SUP. CT. R. 9(1), but the facts contained therein subsequently served, without objection, as the basis for the rulings of the trial court now before us on appeal. Consequently, the record before us consists of those stipulated facts and the easement deeds themselves.

The focal point of this dispute centers on two utility easements granted in 1929 by the plaintiffs' predecessors in title to Grafton Power Company, the defendant's predecessor in title. The 350-foot-wide easements are sections of a utility right-of-way which extends approximately 120 miles south from Monroe, on the Connecticut River, to the Massachusetts state line.

By 1930, Grafton Power Company had constructed two high voltage electric transmission lines on the easements crossing the properties now owned by the plaintiffs. Each line consists of a 230 kV line supported by sixty to seventy-five-foot steel towers, and the two lines run parallel near the outer edges of the right-of-way. In 1955, Grafton Power Company transferred its interests in the easements to New England Power which, in the late 1960's, constructed the Dunbarton Junction switching station on the right-of-way crossing the Lussiers' property. This structure consists of four steel towers enclosed by a chain link fence and serves as an interlink between the transmission lines on the easement and another transmission line originating in Bow.

When the Andersons and the Lussiers bought their properties in 1973 and 1975, respectively, the Lussiers' portion of the right-of-way contained the Dunbarton Junction and four additional towers supporting the 230 kV transmission lines. The Andersons' section of the easement had three towers carrying the high voltage lines. The construction of the third line through the center of the easement added

two ninety-foot towers to each of the plaintiffs' properties and increased the total voltage on the right-of-way by 450 kV.

In August 1988, the Lussiers initiated a suit to prevent the construction of the third transmission line and to seek damages for an alleged inverse condemnation caused by the construction of the Dunbarton Junction. Subsequently, the Andersons intervened as plaintiffs on the issue of the third transmission line. By a stipulation dated December 8, 1988, the plaintiffs withdrew their claims for injunctive relief, agreeing to accept compensation if the easement deeds were determined to prohibit construction of the third line. In January 1989, we declined the parties' request for an interlocutory transfer. In May, the trial court, after receiving memoranda and holding a brief hearing, ruled that the easement deeds permitted the construction of the third power line. Thereafter, in October 1989, pursuant to the defendant's motion for summary judgment, the superior court ruled that the Dunbarton Junction constituted a permitted use under the terms of the easement. The court, in both rulings, found that the terms of the easements clearly expressed the original grantors' and grantee's intent to allow the addition of structures, such as those challenged here, to the right-of-way.

On appeal, the plaintiffs argue that the trial court misapplied the "rule of reason" which this court announced in *Sakansky v. Wein*, 86 N.H. 337, 169 A. 1 (1933). This rule is one of interpretation, designed to give reasonable meaning to unclear or general terms in an easement deed. *Id.* at 339, 169 A. at 2. According to the plaintiffs, the reasonable meaning of the deeds' terms, as intended by the original parties, is derived from the sixty years of continuous and unchanging use within the right-of-way. We disagree.

◼ The beginning and end of our inquiry is found in the words of the easement deeds. Our task is to determine the parties' intent in light of the surrounding circumstances at the time the easements were granted. *Bisson v. Laconia Investment Properties, Inc.*, 131 N.H. 704, 707, 559 A.2d 1338, 1340 (1989); *Sakansky v. Wein, supra* at 339, 169 A. at 2. When, however, the words of the deed are clear and their meanings unambiguous, there is neither a need to resort to extrinsic facts and circumstances to aid our determination, *see* 2-A R. POWELL, THE LAW OF REAL PROPERTY 293[3], at 24-16 n. 10 (1990); Annotation, *Extent and Reasonableness of Use of Private Way in Exercise of Easement Granted in General Terms*, 3 A.L.R.3d 1256, 1262 (1965), nor a need to rely on *Sakansky v. Wein's* "rule of reason." Reminded that the determination of a deed's in-

tended meaning and its legal effect is ultimately a question of law for this court, *Bisson v. Laconia Investment Properties, Inc. supra*, we turn to the deeds at issue.

The pertinent language in the two deeds is identical and is as follows:

> "[W]e, [the Grantors] do hereby give, grant, bargain, sell and convey unto the Grantee . . . the perpetual right and easement to construct, reconstruct, repair, maintain, operate and patrol, for the transmission of high and low voltage electric current and for telephone use, lines of towers or poles or both (which may be erected at different times), with wires and cables strung upon and from the same, and all necessary foundations, anchors, guys, braces, fittings, equipment and appurtenances over, across and upon a strip of [the Grantor's] land 350 feet in width. . . .

> "Also the right and easement from time to time without further payment therefor . . . to remove, renew, replace, add to and otherwise change the lines, and each and every part thereof, and the location thereof within said strip. . . .

> . . .

> "It is the intention of the Grantors to convey to the Grantee the perpetual right and easement to construct, operate and maintain transmission lines as herein described. . . ."

We agree with the trial court that the language of the deeds is clear and controlling. The instruments twice describe the grantee's right to construct as "perpetual." The drafters also made clear that the permitted construction is not limited to just transmission lines, but includes "all necessary . . . appurtenances" for the transmission of electricity. Moreover, as if to remove any residual doubt as to the scope of the grantee's rights, the deeds permit their holders "from time to time" to "add to" the existing lines.

■ Contrary to the plaintiffs' argument, nothing in the deeds indicates that the intended use of the easement was to be limited by the construction or the long and continued use of the two original transmission lines. In fact, we find that the drafters expressly contemplated and provided for future construction and expanded use of the easement. Under these circumstances, where the language clearly expresses the parties' intent, it is unnecessary to utilize the interpretative tool of the "rule of reason" set out in *Sakansky*. Accordingly, we hold that the electrical switching station, known as the

Dunbarton Junction, and the third transmission line are permitted additions to the easement under the terms of the deeds.

 Lest our holding be interpreted to permit unlimited expansion by New England Power of its easement, we wish to emphasize that the parties involved must still act reasonably under the terms of the grant so as not to interfere with the use and enjoyment of each others' estates. *See Donaghey v. Croteau*, 119 N.H. 320, 324–25, 401 A.2d 1081, 1084 (1979). For example, as was conceded by counsel for the defendant at oral argument, if the plaintiffs were able to prove that the addition of the third line would cause adverse health effects from the increased voltage, then the addition might well have been determined to be an unreasonable use of the easement. Obviously, the original parties never intended to allow the easement's use to create such a risk. The plaintiffs, however, made no allegations of unreasonable interference or encroachment; thus our inquiry is limited to and answered by the unambiguous language in the deeds.

 The plaintiffs also argue that the trial court treated the filing of the interlocutory transfer statement as a waiver of their right to a jury trial and that this constituted an abuse of discretion. We find this argument to be without merit. In an equitable action, such as that before us, there is no right to a jury under the New Hampshire Constitution. *McElroy v. Gaffney*, 129 N.H. 382, 386, 529 A.2d 889, 891 (1987). Although the trial court has the discretion to impanel an advisory jury in such proceedings, *id.*, it is not required to do so. The decision to grant or deny a request for a jury in these circumstances rests in the sound exercise of the trial court's discretion. *See* R. WIEBUSCH, 5 NEW HAMPSHIRE PRACTICE, CIVIL PRACTICE AND PROCEDURE § 2045, at 496 (1984). Finding, in the record before us, no abuse of the trial court's discretion, we will not set aside its decision.

*Affirmed.*

All concurred.