Merrimack
No. 2001-219

JOAN HEARTZ & a.

v.

CITY OF CONCORD & a.

Argued: June 5, 2002
Opinion Issued: September 17, 2002

*Baldwin, Callen, Hogan & Kidd, P.L.L.C.*, of Concord (*Grant Kidd* on the brief, and *Jed Z. Callen* orally), for petitioners Joan Heartz and Bruce Calkins.

*Law Offices of Robert V. Johnson, II, PLLC*, of Concord (*Robert V. Johnson, II* on the brief and orally), *pro se.*

*McLane, Graf, Raulerson & Middleton, P.A.*, of Manchester (*Mark C. Rouvalis* on the brief and orally), for the intervenor, Professional Realty Corporation.

*Paul F. Cavanaugh*, city solicitor, of Concord, for the respondent, City of Concord, joined in the intervenor's brief.

DUGGAN, J. In these consolidated appeals, the petitioners, Joan Heartz, Bruce Calkins, and Robert V. Johnson, II, challenge two Superior Court (*Fitzgerald*, J.) orders concerning development of a proposed parking lot at 66½ North State Street in Concord. The petitioners argue that the superior court erred in dismissing their claims on jurisdictional grounds for failing to appeal to the Concord Zoning Board of Adjustment (ZBA) prior to their appeal to the superior court. Petitioner Johnson also appeals the superior court's grant of summary judgment to the intervenor, Professional Realty Corporation (PRC), concerning the use of an easement over his property. We affirm.

The Greek Orthodox Community, Inc. (GOC) owns the land and buildings located at 68 North State Street in Concord. This property is abutted by property at 66 North State Street, owned by Johnson, and at 66½ North State Street, which is accessed by means of an easement across Johnson's property. Both 68 and 66½ North State Street are also abutted by property owned by Heartz and Calkins.

On July 23, 1999, GOC filed two applications with the Concord Planning Board (planning board) seeking approval of a subdivision and large scale development involving land it sought to purchase at 66½ North State Street. These applications described the demolition of the existing structure on 66½ North State Street and construction of a nineteen-car parking lot in its place. The lot was to benefit the church owned by GOC on 68 North State Street, and would be accessed by the easement across Johnson's property.

The planning board scheduled a public hearing to be held on August 18, 1999. The petitioners received proper notice of the hearing. The purpose of the public hearing was to consider the site plan for GOC's proposed large scale development. Prior to the hearing, however, GOC asked the planning board to remove its applications from the August 18 meeting agenda. At the meeting, the planning board told Heartz and Calkins that the hearing on GOC's applications had been postponed, and that they would be notified if another application was submitted in the future.

On August 17, 1999, Hamilton Rice, the City of Concord Code Enforcement Officer, met with GOC representatives and Robert Pollock of the City of Concord Planning Division. Interpreting section 28-11-4 of the Concord Zoning Ordinance, the code enforcement officer informed Pollock and the GOC representatives that if any entity other than GOC owned the property at 66½ North State Street and submitted an application complying with the applicable design regulations, a subdivision application and review would not be necessary. The code enforcement officer also indicated that the application would then only be subject to architectural design review, which does not require public participation or a hearing.

Subsequently, in a letter dated September 9, 1999, counsel for GOC asked the planning board to change the name on GOC's parking lot application for 66½ North State Street from "Holy Trinity Greek Orthodox Church" to "Professional Realty Corporation," and noted that the application no longer was for a subdivision. That same day, the architectural design review committee approved the amended parking lot application. At its regular meeting on September 15, 1999, the planning board approved the amended application by a vote of five to one. PRC purchased the property on December 6, 1999.

None of the petitioners received notice of the planning board's September 15 meeting. Because the planning board treated the amended parking lot application as an architectural design review matter rather than a subdivision application, no public hearing was held. Although Johnson attended the September 15 meeting, his request to have the planning board's vote rescinded was denied. The planning board offered Johnson an opportunity to be heard on the application, but he declined the invitation.

Two appeals from the planning board's decision, one by Heartz and Calkins and one by Johnson, were filed in superior court. The appeals were consolidated. The parties filed four motions for summary judgment: (1) Heartz and Calkins moved for partial summary judgment on the issue of notice; (2) PRC filed a cross-motion for summary judgment against all three petitioners on the issues of notice and public comment and on Johnson's claims concerning the planning board's application of the

relevant parking lot design criteria; (3) PRC moved for summary judgment against Johnson on the issue of burden on the easement over Johnson's property; and (4) Johnson filed a cross-motion for summary judgment on the easement issue.

Before addressing these questions, the superior court, *sua sponte*, dismissed both appeals on the grounds that it lacked jurisdiction to rule on the issues raised by the petitioners. The court held that the notice and comment issues should have first been brought to the ZBA under RSA 676:5 (1996) because these issues concerned an interpretation of a zoning ordinance and not a "decision of the planning board concerning a plat or subdivision" for which direct superior court review is available under RSA 677:15 (Supp. 2001). The court determined that it lacked jurisdiction on the design issue because the planning board's approval of PRC's application was granted in the context of an architectural design review and therefore was not directly appealable to the superior court under RSA 677:15. Finally, the court held that the easement issue was inappropriate for a planning board appeal, and must instead be raised in a declaratory judgment action.

Petitioners Heartz, Calkins, and Johnson filed motions for reconsideration. For essentially the same reasons given in its original order, the superior court denied each of the motions concerning dismissal of the planning board appeal. However, the court granted Johnson's motion for reconsideration concerning the easement claim. The court then granted PRC's summary judgment motion on the easement issue and denied Johnson's motion.

On appeal, all three petitioners challenge the superior court's dismissal of their notice and comment claims, arguing that the superior court had jurisdiction. We disagree.

The jurisdictional issue involves the interplay between RSA 676:5, III (1996) and RSA 677:15, I (Supp. 2001). *See Hoffman v. Town of Gilford,* 147 N.H. 85, 87 (2001). RSA 676:5, III provides, in pertinent part:

> If, in the exercise of subdivision or site plan review, the planning board makes any decision or determination which is based upon the terms of the zoning ordinance, or upon any construction, interpretation, or application of the zoning ordinance, which would be appealable to the board of adjustment if it had been made by the administrative officer, then such decision may be appealed to the board of adjustment under this section . . . .

RSA 677:15, I, provides, in pertinent part:

Any persons aggrieved by any decision of the planning board concerning a plat or subdivision may present to the superior court a petition, duly verified, setting forth that such decision is illegal or unreasonable in whole or in part and specifying the grounds upon which the same is claimed to be illegal or unreasonable. . . . *This paragraph shall not apply to planning board decisions appealable to the board of adjustment pursuant to RSA 676:5, III.*

(Emphasis added.)

In interpreting RSA 676:5, we have noted that "for issues involving the interpretation or application of a zoning ordinance, there are two levels of review. At the local level, the ZBA reviews the decision to ensure uniform application of local zoning laws. Then, there is a statutory right to have the superior court review the ZBA decision." *Hoffman*, 147 N.H. at 88 (citations omitted). RSA 677:15, in contrast, concerns planning issues. *See id.* A decision made by a planning board "concerning a plat or subdivision" may be appealed directly to the superior court by a petition for a writ of certiorari. *Id.*

■ We agree with the superior court that the petitioners were required to appeal to the ZBA under RSA 676:5 prior to seeking superior court review. After GOC applied for planning board approval in July 1999, the planning board appropriately began reviewing the application under subdivision and large scale development review. During the course of this review, the planning board decided that only architectural design review was required given the amendment changing the applicant from GOC to PRC. This decision was based upon an interpretation of section 28-11-4 of the Concord Zoning Ordinance. Because the planning board's decision to conduct only architectural design review was made during the subdivision and large scale development review process and was based upon an interpretation of the zoning ordinance, the requirements of RSA 676:5, III apply. Therefore, prior to appealing to the superior court, the petitioners were required to seek ZBA review of the planning board's decision to apply only architectural design review, which does not require public notice or a hearing. Moreover, because the planning board's decision was appealable to the ZBA under RSA 676:5, III, the petitioners were not entitled to direct superior court review under RSA 677:15.

Petitioner Johnson also challenges the superior court's grant of summary judgment to PRC on the easement claim. The court concluded that (1) the deed language granting the easement permits it to be used to benefit property beyond the dominant tenement, and (2) Johnson failed to

allege sufficient facts that PRC's proposed development would create an unreasonable burden on the easement.

"In reviewing a grant of summary judgment, we will affirm the judgment if the evidence reveals no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law." *Nevins v. N.H. Dep't of Resources and Economic Dev.*, 147 N.H. 484, 486 (2002); *see* RSA 491:8-a, III (1997).

Johnson raises two issues concerning the easement. First, he argues that use of the easement to access the proposed parking lot is illegal because the easement will benefit a non-dominant, third-party tenement. Second, he argues that such use would unreasonably burden the easement. We address each of these issues in turn.

The easement was created in an 1847 deed and was later revised in an 1854 deed. The relevant language of the 1854 deed states:

> Excepting and reserving a right of way one rod in width on the southerly side of [66 North State Street] with the right of free ingress and egress over said rod in width to & from [66½ North State Street] hereby conveyed *at all times and for all purposes*. Meaning & intending that a passway one rod in width shall at all times be open on the southerly side of [66 North State Street] to [66½ North State Street].

(Emphasis added.)

Johnson first argues that use of the easement to access the proposed parking lot is illegal because the easement will benefit a non-dominant, third-party tenement by providing parking for the church on 68 North State Street. Our case law, however, does not foreclose the possibility of an easement benefiting a non-dominant tenement. *See Burcky v. Knowles*, 120 N.H. 244, 247 (1980) (defining appurtenant easement as incorporeal right *generally* created for purpose of benefiting owner of dominant estate).

Johnson relies upon the RESTATEMENT (THIRD) OF PROPERTY, which states: "Unless the terms of the servitude determined under § 4.1 provide otherwise, an appurtenant easement . . . may not be used for the benefit of property other than the dominant estate." RESTATEMENT (THIRD) OF PROPERTY § 4.11, at 619 (2000). Johnson also cites case law from other jurisdictions to support the proposition that the benefits of an easement may not be extended to property beyond the original tract. In all but one of these cases, however, the owner of the dominant tenement used the easement to benefit *later-acquired* property. *See Abington Ltd. Partnership v. Heublein*, 717 A.2d 1232 (Conn. 1998); *McLaughlin v. Bd. of Selectmen*, 664 N.E.2d 786 (Mass. 1996); *Schadewald v. Brulé*, 570

N.W.2d 788 (Mich. App. 1997); *State Ex Rel. Fisher v. McNutt*, 597 N.E.2d 539 (Ohio App. 1992); *Markley v. Lopresti*, 421 A.2d 825 (Pa. Super. 1980). The remaining case cited by Johnson concerns the situation where an existing roadway easement was extended to another tract owned by a third party. However, this case addresses whether the increased use resulting from such an extension places an unreasonable burden on the existing easement, not whether an easement may benefit property beyond the original tract. *See Smith v. Combs*, 554 S.W.2d 412 (Ky. App. 1977).

Section 4.1 of the RESTATEMENT, as well as our case law, states that the language creating a servitude should be interpreted to carry out the parties' intentions and the purposes of the servitude. RESTATEMENT (THIRD) OF PROPERTY § 4.1, at 496-97; *Flanagan v. Prudhomme*, 138 N.H. 561, 573 (1994); *Lussier v. N.E. Power Co.*, 133 N.H. 753, 756 (1990). When the language of the deed is clear and unambiguous, we need not consider extrinsic evidence. *Flanagan*, 138 N.H. at 573; *Lussier*, 133 N.H. at 756.

▮ Johnson contends that we should apply the "rule of reason" from *Sakansky v. Wein*, 86 N.H. 337 (1933), to interpret the parties' intentions concerning the easement. The rule of reason applies at two points in the analysis of easements. First, we use the rule to interpret and give reasonable meaning to general or unclear terms in the deed language granting an easement. *See Lussier*, 133 N.H. at 756. Second, irrespective of the deed language, we use the rule to determine whether a particular use of the easement would be unreasonably burdensome. *See Flanagan*, 138 N.H. at 574.

The rule of reason requires the court to "give a meaning to words which the parties or their predecessors in title have actually used . . . or else to give a detailed definition to rights created by general words either actually used or, whose existence is implied by law." *Sakansky*, 86 N.H. at 339. Johnson argues that the language "at all times and for all purposes" is general and, therefore, that the rule of reason applies. Since *Sakansky*, however, we have held that "[w]hen . . . the words of the deed are clear and their meanings unambiguous, there is . . . [no] need to rely on *Sakansky v. Wein's* rule of reason" in interpreting the language of the deed. *Lussier*, 133 N.H. at 756 (citations and quotations omitted).

▮ We conclude, as did the superior court, that the language "at all times and for all purposes" is clear and unambiguous. Therefore, following *Lussier*, we need not apply the rule of reason to interpret the parties' intentions under the deed, as the language itself is controlling. Because nothing in the deed's language indicates an intention to prevent non-dominant, third-party tenements from benefiting from the easement, we hold that PRC's proposed use of the easement across Johnson's property

is not illegal even if it benefits property beyond 66½ North State Street, the dominant tenement.

Johnson next argues that use of the easement to access the proposed parking lot would create an unreasonable burden upon the easement. Although the deed allows the easement to be used at all times and for all purposes, "the parties involved must still act reasonably under the terms of the grant so as not to interfere with the use and enjoyment of each others' estates." *Lussier*, 133 N.H. at 758.

■ ■ We apply the rule of reason from *Sakansky* in determining whether a particular use of an easement would create an unreasonable burden. *Flanagan*, 138 N.H. at 574; *Delaney v. Gurrieri*, 122 N.H. 819, 821 (1982). Reasonableness is a question of fact that is determined by considering the surrounding circumstances, such as location and the use of the parties' properties, and the advantages and disadvantages to each party. *Downing House Realty v. Hampe*, 127 N.H. 92, 96 (1985); *Delaney*, 122 N.H. at 821; *Crocker v. Canaan College*, 110 N.H. 384, 387 (1970); *see Nadeau v. Town of Durham*, 129 N.H. 663, 667-68 (1987). However, reasonableness is not a static concept. *Downing House*, 127 N.H. at 96; *Sakansky*, 86 N.H. at 341. If the proposed use of the easement is a normal development from conditions existing at the time of the grant, the use is not considered to be unreasonably burdensome. *See Downing House*, 127 N.H. at 96. Also, if the complaining party fails to make sufficient factual allegations of unreasonable use or burden, we need only consider the unambiguous language in the deed. *See Lussier*, 133 N.H. at 758.

■ In granting PRC's motion for summary judgment, the superior court ruled that Johnson's objection to the motion failed to set forth sufficient facts showing that PRC's proposed use of the easement would create an unreasonable burden. We agree. Johnson's objection merely states that PRC's proposed use will overburden the easement because it will (1) change the historical use of the easement, (2) broaden the types and increase the number of vehicles using the easement, and (3) provide benefits solely to a third-party tenement. The objection also states simply that Johnson's property "will be damaged." The objection does not present any factual allegations of unreasonable burden or damages to the easement or Johnson's property, nor do the affidavits filed by PRC upon which Johnson relies. Moreover, Johnson's conclusory statement that his property will be damaged is insufficient to satisfy his burden in opposing PRC's summary judgment motion. *See N.E. Tel. & Tel. Co. v. City of Franklin*, 141 N.H. 449, 454 (1996).

■ Because Johnson failed to make sufficient factual allegations of unreasonable use or burden, we need only consider the unambiguous language in the deed. *See Lussier*, 133 N.H. at 758. The deed clearly allows PRC to use the easement "at all times and for all purposes." Therefore, we conclude that the trial court did not err in granting summary judgment to PRC.

*Affirmed.*

NADEAU and DALIANIS, JJ., concurred.