Rockingham
No. 2005-003

MICHAEL E. GILL & *a.*

v.

STEPHEN G. GERRATO & *a.*

Argued: May 10, 2006
Opinion Issued: August 3, 2006

*Backus, Meyer, Solomon & Branch, LLP*, of Manchester (*Steven Solomon* on the brief and orally), for the plaintiffs.

*Anthony S. Hartnett*, of Dover, by brief and orally, for defendants Stephen G. Gerrato, Phyllis G. Gerrato, Andre M. Birse, Cynthia L. Birse, and John M. Cots.

GALWAY, J. Defendants Stephen G. and Phyllis G. Gerrato, Andrew M. and Cynthia L. Birse, and John M. Cots appeal a decision of the Superior

Court (*Morrill*, J.) ruling that the plaintiffs, Michael E. and David Gill, have an easement to use a lane that runs through the defendants' properties to the Gills' property. The Gills cross-appeal the superior court's ruling that no public way existed over the lane. We reverse in part and remand.

The record supports the following facts. The lane at issue extends almost perpendicularly from Route 151, formerly known as Old Post Road or Post Road, in Greenland. The Cots property, which is the smallest of the three properties owned by the defendants, sits at the corner of the lane and Route 151. The Birse property borders both Route 151 and the lane by wrapping around part of the Cots property. Similarly, the Gerrato property borders both Route 151 and the lane by wrapping around part of the Birse property. In contrast, the Gill property does not border Route 151. The Gill property shares its borders with, among other things, the Gerrato property and the lane.

The Gills petitioned for a declaratory judgment that they have an easement to use the lane for vehicular and pedestrian access to Route 151 and the right to run utility lines to their land. They also requested a ruling that the lane was a public way and that buildings located on the Cots property encroached on it.

Regarding the easement, the trial court found the following facts. In 1956, the Birses bought a tract of land that included what is now all of the defendants' properties. At that time, the Gill property was owned by the Stearnses, who used it to pasture cows. In 1962, the Birses conveyed a small tract of land to the McGraths. The conveyance was subject to:

> An easement right of way for all purposes of ingress and egress running from Old Post Road to land of the Birses; the said easement measures approximately 28.81 feet in width along Old Post Road and runs between two stone walls by Parker land on the West and McGrath land on the East.

When this action was commenced, Cots owned the McGrath property, and the defendants concede that Cots' deed also contained the same reservation. In 1975, Barbara Birse, then the sole owner of the Birse property, conveyed a large portion of her land to the Fosses. This is now the Gerrato property. The conveyance stated:

> See Mylar Plan approved by the Town of Greenland Planning Board at hearing dated November 20, 1975 right of access for Stearns [who owned the Gill property at that time], McGrath, Birse, and Henry and Sheila Foss over the so-called Stearns right of way from Post Road on said Mylar Plan, being binding on

all their respective heirs, executors, administrators and assigns. Also the McGrath house to remain standing covering a small part of this right of way.

The subdivision plan referenced in the deed as the Mylar Plan contained language similar to the deed, stating:

> The Stearns right-of-way on the south end of McGrath, Birse land & south end of land being acquired by H&S Foss from Birse, & land of George Stearns et al as running from Post Road to & including Stearns property is dedicated as a private right-of-way for continuous use of all the property owners named above & is subject to Greenland Zoning Regulations & is binding also on all the administrators, executors, heirs & assigns of the above property owners. The McGrath home to remain standing as presently situate on a small part of this right-of-way without and [*sic*] charge of hindrance by anybody, free of any charges of any kind.

Pursuant to the language in the above documents, the trial court found that all of the defendants' deeds contained references to a right of way benefiting the Stearns property, which the Gills now own. Based primarily upon these facts, the trial court ruled that the Gills had an easement to use the right of way for all reasonable residential and agricultural uses and to install utility services.

Regarding the public way, the trial court found the following facts. In 1713, the Commissioners of Portsmouth conveyed to a private landowner what is now the Gills' land. That conveyance used the lane as a boundary line, describing the lane as the road extending from the "high Road," now Route 151, to Weeks Mill. Subsequent conveyances made around that time also used the road between Route 151 and Weeks Mill both as a boundary line and as a means to access the properties. In particular, a deed from 1757 delineated a boundary line as "bounded Westerly on a highway leading to Weeks's old Saw mill So Called." The trial court took a view of the site and found that in a nearly straight line from the terminus of the lane sits the remnants of the former Weeks Mill. Based upon these facts, the trial court concluded that the lane was used as a public road during the 1700s; however, the court did not expressly find how such a road was established. The trial court also found that public use of the road ended some time in the late 1700s or early 1800s and stated that "inconsistent public use is insufficient to create public rights." The court's final conclusion was that, if a public road had ever been established, it no longer existed, stating, "It is unfair, I think, to saddle the Town of Greenland and

abutters to the existence of road [*sic*] that was probably abandoned before New Hampshire's Constitution was written."

On appeal, the defendants argue that the express easement from the Birses to the McGraths in the 1962 conveyance, and then from the McGraths to Cots, was not intended to benefit the Gill property and should not do so now. The defendants also challenge the right of way that the planning board created in the Mylar Plan. They argue that the planning board's action of creating the private right of way to benefit the Gill and other properties was beyond the scope of the planning board's authority. Finally, the defendants appeal an order issued by the trial court awarding costs to the Gills.

The Gills cross-appeal the trial court's ruling that the public way over the lane established in the 1700s no longer exists. The common-law period for prescriptive establishment of a road was twenty years of public use, the Gills argue, which the trial court's findings support. Once the road existed, the Gills conclude, only a formal proceeding to discontinue the road could have ended the road's public use.

After the appeal was filed, the defendants notified the court that defendant Cots sold his lot to Andrea R. Gordon, Michael D. Gordon, Richard M. Gordon, Carmen C. Gordon, and Peter R. Gordon. The Gordons have been joined as parties to this appeal. We will continue, however, to refer to their property as the "Cots property."

## I. Easement

■ We begin our analysis by addressing the trial court's ruling that the Gills have a right of way over the defendants' properties to access Route 151 for all reasonable residential and agricultural uses, and to install utility services. "The interpretation of a deeded right of way is ultimately a question of law for this court to decide by determining the intention of the parties at the time of the deed in light of surrounding circumstances." *Flanagan v. Prudhomme*, 138 N.H. 561, 573 (1994). If the terms of the deed are clear and unambiguous, those terms control how we construe the parties' intent. *Arcidi v. Town of Rye*, 150 N.H. 694, 701 (2004). Thus, "[w]hen the language of the deed is clear and unambiguous, we need not consider extrinsic evidence." *Heartz v. City of Concord*, 148 N.H. 325, 331 (2002).

The defendants contest the trial court's finding of an easement, arguing that the easement created in the deed from the Birses to the McGraths in 1962 was not intended to benefit the Gill property. The trial court concluded, based upon our holding in *Heartz v. City of Concord*, 148 N.H. at 331, that the deed language created an express easement for the Gills' benefit over the defendants' properties.

In *Heartz*, an easement existed over the petitioner's property to allow access to a building on an adjacent parcel, located at 66½ North State Street (66½), which was the dominant tenement. *Id.* at 326. The language in the deed stated that 66½ had an easement over the petitioner's land "at all times and for all purposes." *Id.* at 330. A church was located at 68 North State Street (68), which was adjacent to 66½. *Id.* at 326. An entity called Professional Realty Corporation (PRC) planned to purchase the 66½ plot and sought planning board approval to create a parking lot on the plot to service the church at 68. *Id.* The 66½ lot would still only be accessible via the easement on the petitioner's property. *Id.* The petitioner argued that use of the easement to access the parking lot on 66½ would be illegal because the easement's use would benefit the church on 68, which was a non-dominant, third-party tenement. *Id.* at 330. We determined that the deed's language of "at all times and for all purposes" was clear and unambiguous, thus allowing us to interpret the intent of the parties directly from the language of the deed. *Id.* at 331. We held that, because nothing in the deed's language indicated an intention by the parties to prevent non-dominant, third-party tenements from benefiting from the easement, it was not illegal for the dominant tenement to use the easement in a manner that benefited a non-dominant tenement. *Id.* at 332. We did not hold, however, that the non-dominant, third-party tenement had its own easement to cross the servient tenement.

Many facts in the instant case are similar to those in *Heartz*. The Cots property is the servient tenement, the Birse property is the dominant tenement, and the Gill property is the non-dominant, third-party tenement. The easement language in the deed from Birse to McGrath states that the easement may be used "for all purposes of ingress and egress." We agree with the trial court that the language in the Birse-McGrath easement is clear and unambiguous, thus allowing the terms of the easement to control our interpretation of the parties' intent. Further, neither the deed in *Heartz* nor the deed in the instant case indicate an intention by the parties to prevent non-dominant, third-party tenements from benefiting from the easement. Thus, as in *Heartz*, the dominant tenement in the instant case could use the easement in a manner that benefits a non-dominant tenement.

The two cases are distinguishable, however, because, in the instant case, the dominant tenement does not intend to use the easement in a manner that benefits the non-dominant, third-party tenement. The Birses oppose the Gills' use of the easement over the Cots property. Accordingly, the only way for the Gills to use the easement over the Cots property would be for the Gills to have their own right to that easement.

The trial court ruled that the Gills had such a right, relying on *Heartz*. We disagree. We did not hold in *Heartz* that the non-dominant, third-party tenement had an independent right to the easement over the servient tenement. Simply because there is no language in a deed that indicates an intention by the parties to prevent non-dominant, third-party tenements from benefiting from the easement does not mean that the deed creates an independent right to the easement in a non-dominant, third party tenement. Further, the Gills could not have obtained such a right from the Birses because it "is well settled that a dominant tenement's interest in an easement cannot be severed from the land by transferring it to a third party." *Arcidi*, 150 N.H. at 699. Because we find no language in the deed establishing an independent easement for the benefit of the Gill property, we reverse the trial court's ruling that the Gills have an express easement over the Cots property for all reasonable residential and agricultural uses.

Additionally, the defendants argue that the planning board exceeded its authority by attempting to create a right of way to benefit the Gill property. Due to the trial court's ruling that the Gills had an express easement, the trial court made few findings and no rulings regarding the planning board's actions at the 1975 meeting. We are thus unable to determine whether the planning board created an easement, or required the Birses to create an easement, and whether the board exceeded its authority. Accordingly, we remand to the trial court the issue of whether the planning board exceeded its authority in its actions at the 1975 planning board meeting.

## II. Public Way

Turning to the Gills' cross-appeal, they argue that the trial court erroneously ruled that the public way no longer exists due to abandonment and disuse. The Gills argue that the trial court concluded that the lane was part of a public way either laid out or established by prescription in the 1700s. In either case, the Gills assert, once a public way is established, the public's right of passage cannot be terminated absent formal proceedings discontinuing those rights.

The defendants respond that the trial court's order implies a finding of a public road on the lane and that such a finding was error. The court found no evidence of a layout by the local government, the defendants argue, which is necessary for a layout to occur. As for a road by prescription, the defendants interpret the trial court's order as not finding a road by prescription. This was the correct conclusion, the defendants argue, because there was insufficient proof to demonstrate sufficient public use or

adverse use. Finally, the defendants argue that, whether or not the lane was ever a public road, it was abandoned and is no longer a road.

The Gills and the defendants interpret the trial court's order differently. We concur with both parties that the trial court's order contains ambiguities. The trial court did not explicitly find that a public road was ever dedicated and accepted, laid out, or established by prescription over the lane. The trial court also did not explicitly find that, if a road existed, it was discontinued. The court determined, however, that the lane was, at one time, a road, stating, "I am convinced that a road from Post Road to the Weeks Mill on the Winnicut River was used as a public road during the 1700's." Thus, the court may have meant that there once was a road established by prescription. The court also stated, however, that "inconsistent public use is insufficient to create public rights," and seemed to conclude that there were insufficient facts to support a finding of a road by prescription. Whether a highway is created by prescription is a finding of fact. *Mahoney v. Town of Canterbury*, 150 N.H. 148, 150 (2003). Because such a determination is a finding of fact that the trial court did not make, we are unable to conclude whether the lane was ever a highway, and if it remains one today. As factual findings are the responsibility of the trial court, we must remand the case for findings as to whether or not a public road was ever established on the lane, and, if so, how such a road was established and whether it was discontinued.

To assist the trial court in its determinations, we note that, even before New Hampshire became a State, the common law provided for establishment of a road by dedication and acceptance or by public use of twenty years or more. *State v. Atherton*, 16 N.H. 203, 208-11 (1844); *see also* 16 P. LOUGHLIN, NEW HAMPSHIRE PRACTICE, MUNICIPAL LAW AND TAXATION § 45.03, at 156 (Supp. 2005). Continuous public use for twenty years was considered implied dedication and acceptance, and established a public road. *Atherton*, 16 N.H. at 209-10. Thus, a finding that the road was not established by prescription simply because the twenty years of consistent use occurred before New Hampshire became a State would not be supported by law. We also note New Hampshire's longstanding rule of law that an established public highway cannot be discontinued simply by lack of use. *Thompson v. Major*, 58 N.H. 242, 244 (1878); *see also* LOUGHLIN, *supra* § 54.02, at 578 (1993). If the court finds that a public road exists on the lane, such a ruling would not necessarily require the Town of Greenland to maintain the lane as it does all other roads. If the lane is a class VI highway, pursuant to RSA 229:5 (Supp. 2005), the town would have no duty to maintain it. *Stevens v. Town of Goshen*, 141 N.H. 219, 223 (1996). A highway can become a class VI highway if it has "not

been maintained and repaired by the town in suitable condition for travel thereon for 5 successive years or more." RSA 229:5, VII.

█ We finally note that, even if the trial court finds evidence to support the existence of a road, that does not require a finding that a road was established. "[T]he inclusion of a road on a map is competent evidence to support the inference of use of the road," and the mention of a road in a deed "indicates use by people other than the owners of the land through which the road runs." *Mahoney*, 150 N.H. at 151. Such evidence supplies inferences and indications of a road, but it does not require a finding of a public road as a matter of law. Whether or not the trial court finds that a road was established, we will be bound by the trial court's findings unless they are not supported by the evidence or are erroneous as a matter of law. *Id.* at 150. At trial, the party asserting that a public road was established by prescription will have the burden of proof by a balance of the probabilities. *Id.* at 150-51.

*III. Costs*

Finally, in light of our rulings above, we vacate the award of costs because the prevailing party in this case has not yet been determined.

*Reversed in part and remanded.*

BRODERICK, C.J., and DALIANIS, DUGGAN and HICKS, JJ., concurred.