**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2014-0572, <u>Paul T. Marino v. Christopher Muro</u>, the court on April 27, 2015, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case.  <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm in part, vacate in part, and remand.

The respondent, Christopher Muro, appeals orders of the Superior Court (<u>McHugh</u>, J. and <u>Delker</u>, J.) granting declaratory and injunctive relief relative to a deeded right-of-way that both burdens and benefits his property and the adjoining property of the petitioner, Paul T. Marino, along the parties' shared boundary.  The respondent contends that the trial court erred by: (1) expanding the scope of the right-of-way by granting the petitioner a right to pass over portions of the respondent's property that are not subject to the right-of-way grant; (2) failing to clearly define the scope of the right-of-way; (3) considering the petitioner's needs, and ignoring the respondent's needs, in construing the parties' rights; (4) not terminating the right-of-way on grounds of abandonment or cessation of purpose; (5) overlooking certain evidence, and finding that the evidence was insufficient to rule on certain of the respondent's requested findings of fact; (6) not applying the doctrines of unclean hands and laches to bar the petitioner's claims; and (7) rendering inconsistent rulings regarding the right-of-way.  The respondent further contends that the presiding judicial officer, Justice McHugh, was impermissibly biased against him.

At the outset, we note that the parties' arguments are premised upon differing interpretations of the trial court's order relative to the scope of the right-of-way.  Because a proper understanding of the trial court's order is essential to resolving the issues on appeal, we begin by interpreting the trial court's order regarding the scope of the right-of-way.  The interpretation of a trial court order is a question of law, which we review <u>de novo</u>.  <u>In the Matter of Salesky & Salesky</u>, 157 N.H. 698, 702 (2008).  We construe the order with reference to the issues it was intended to decide, and construe its subsidiary findings so as not to conflict with the order's primary purpose.  <u>Id</u>. at 703.

The record reflects that both properties have frontage on Marcy Street in Portsmouth, and contain houses occupying most of their respective lots.  The record further reflects that the houses are irregularly shaped, such that the distance between the building envelopes along the properties' shared boundary is not uniform, but changes at various points along the boundary.  The houses are also not equidistant from the shared boundary.  At its narrowest, in an

area where both houses "bump out" toward each other, the distance between the "bump outs" is approximately sixty-five or sixty-six inches. Although both houses have multiple exterior walls in L-shaped configurations that are parallel to the rear lot line, the rear wall in each house that is closest to the rear lot line forms a line that is perpendicular to the same point on the shared boundary.

The present matter began as a request for declaratory and injunctive relief relative to a fence that the respondent erected along the boundary between the two lots. The petitioner sought an order requiring the fence's removal, asserting that it violated his easement rights pursuant to the right-of-way. The right-of-way was created by deed in 1946, when the parties' common predecessor-in-title conveyed the respondent's property. That deed provided:

> A right of way from said Marcy Street for all usual and customary purposes, and affording access to the rear of the granted premises and the premises of the grantor adjoining the same on the North is hereby granted and reserved by the grantor for the common use of the grantees and grantor and their heirs and assigns, the median line of which is the division line between the premises of the grantor and grantee as herein defined.

The respondent pleaded various affirmative defenses seeking to have the right-of-way extinguished. He further counterclaimed, asserting that the petitioner had himself violated the right-of-way by planting certain shrubs within it, and that he had further sought municipal approval to park a car within it. The respondent requested that the trial court limit the right-of-way to foot traffic and enjoin the petitioner from parking or planting shrubbery within it.

Following a bench trial, the trial court found:

> As created in the 1940's [the right-of-way] still exists today and a reasonable use of that right of way requires passage over the entire width of it which the Court finds to be the space between both parties['] houses. "Customary uses" include the passage of bicycles, lawn and garden equipment etc., [but] does not include motor vehicles.

The trial court determined that the respondent's fence "interfere[d] with Petitioner's ability to carry items from Marcy Street to the backyard or back door of his house, and prevent[ed] the ability to move equipment or objects such as Petitioner's baby stroller from the front yard to the back yard." The court ordered the respondent to remove that portion of his fence "extend[ing] from Marcy Street to the end of the parties' houses," but otherwise allowed the

portion of the fence in the respondent's backyard to remain, finding that the right-of-way "terminates at the end of the parties['] houses." The trial court did not otherwise describe the location of the right-of-way with precision.

On appeal, the respondent construes the trial court's order as finding that the right-of-way occupies the entire space between the two houses at any given point. He argues, however, that because the properties have multiple rear-facing walls, the trial court's determination that the right-of-way "terminates at the end of the parties['] houses" renders the order ambiguous. According to the respondent, the petitioner made various improvements behind his "bump out" that are necessarily within the right-of-way, and the trial court's failure to specify which "end of the parties['] houses" it meant makes it impossible to determine the extent of the respondent's easement rights and the petitioner's violations. The petitioner counters that, because the trial court granted his requested finding of fact, which was based upon the parties' joint stipulation, that the shared boundary is "the midline of the right-of-way," and because the parties' houses are not equidistant from that boundary, the width of the right-of-way is necessarily limited by whichever house is closest to the boundary at any given point. Thus, according to the petitioner, the trial court's order defines the right-of-way as consisting of twice the amount of space between the boundary and the house closest to it at any point. Under his interpretation, the petitioner contends that "all or most of" his improvements to the rear of his "bump out" are outside the right-of-way. Under either party's interpretation, the width of the right-of-way fluctuates along its entire length.

We conclude that neither party has correctly interpreted the trial court's order. In finding that "reasonable use" of the right-of-way required "passage over the entire width of it," and that "the entire width of it" constituted "the space between" both houses, the trial court was applying the common law "rule of reason" to interpret the scope of the right-of-way left undefined by the deeded grant, and to determine whether the fence interfered with the petitioner's use of the right-of-way. See Heartz v. City of Concord, 148 N.H. 325, 331 (2002). "The rule of reason requires the court to give a meaning to words which the parties or their predecessors in title have actually used or else to give a detailed definition to rights created by general words either actually used or, whose existence is implied by law." Id. (quotation and ellipsis omitted). Although reasonableness is not a static concept, see id. at 332, it generally limits easement rights to those rights that are reasonably necessary for the enjoyment of the easement, see Thurston Enterprises, Inc. v. Baldi, 128 N.H. 760, 766 (1986); Sakansky v. Wein, 86 N.H. 337, 339-40 (1933); Bean v. Coleman, 44 N.H. 539, 544 (1863).

Here, the trial court found that passage over the entire width of the space between the two houses was reasonably necessary in order to access the backyard of either property. Because the distance between the houses is not

uniform, however, this finding implies that only the space between the houses at the narrowest point, or between the "bump outs," is what is reasonably necessary for backyard access; the additional space existing at other points between the houses is necessarily more than what is reasonably necessary. Thus, the trial court's order implicitly limits the right-of-way to a single uniform width established by the distance between the houses at its narrowest point. Because the purpose of the right-of-way is backyard access, we agree with the petitioner that the trial court necessarily found that it terminates at the point along the shared boundary at which the rear wall of each house that is closest to the rear lot line forms a perpendicular line.

Accordingly, as we construe the trial court's orders, the deeded right-of-way: (1) begins at Marcy Street; (2) runs in a straight line between the two houses along the shared boundary; (3) is uniform in width along its entire length; (4) occupies the entire space between the houses at the narrowest point between the "bump outs"; and (5) terminates at the point perpendicular to the rear exterior wall of each house that is closest to the rear lot line. To the extent that this interpretation is inconsistent with the parties' stipulation, and the requested finding of fact that the trial court granted, that the shared boundary is "the midline of the right-of-way," we conclude that the stipulated finding conflicts with the overall purpose of the decree. Salesky, 157 N.H. at 703.

Turning to the issues raised by the respondent on appeal, we first address his argument that Justice McHugh was impermissibly biased. The respondent relies upon certain statements that Justice McHugh made in his order denying the respondent's motion for reconsideration to argue that he had abandoned his impartiality, including statements that the respondent's filing was "irrational" and reflected "[h]is paranoia," and that his "actions suggest that he is every neighbor's worst nightmare." The respondent raises this issue as plain error. See Sup. Ct. R. 16-A.

The party claiming judicial bias has the burden to demonstrate the existence of bias, the likelihood of bias, or an appearance of such bias that the judge is unable to balance vindicating the interests of the court and those of a party. In the Matter of Tapply & Zukatis, 162 N.H. 285, 297 (2011). The test for whether there is an appearance of partiality is objective – whether an objective, disinterested observer, fully informed of the facts, would have significant doubt that justice would be done in the case. Id. Opinions formed by a presiding judge on the basis of facts introduced or events occurring during the course of a trial do not constitute a basis for recusal unless they display such a deep-seated favoritism or antagonism that they would render a fair judgment impossible. Id. Thus, judicial remarks that are disapproving of, or even hostile to, a party ordinarily will not support a bias challenge. Id.

4

Here, while Justice McHugh's comments may have been intemperate, they do not reflect a deep-seated favoritism or antagonism that would render a fair judgment impossible, particularly when viewed within the context of the entire case. See id. at 299-300. We conclude that an objective, disinterested person, fully informed of the facts, would not have entertained significant doubt that justice would be done in the case. See id. Accordingly, there was no error, plain or otherwise, in Justice McHugh's failure to recuse himself.

We next address the respondent's arguments that the trial court impermissibly expanded the right-of-way, and rendered inconsistent rulings, by granting the petitioner a right to pass over other portions of the respondent's property. The record reflects that in 2011, the respondent built a side entrance to his house that faces the right-of-way in the area behind the petitioner's "bump out." At the time of trial, there were temporary steps to the side entrance, and the respondent planned to build permanent steps. The bottom step was approximately seven or eight inches from the respondent's fence.

Although the petition did not include any claim that the steps interfered with the petitioner's right to use the right-of-way, at trial the petitioner testified that he believed the steps were blocking the right-of-way. He also submitted a requested ruling of law that the respondent "may not construct steps . . . which project into the area between the parties' houses as such construction would unreasonably block the right of way." The trial court denied the requested ruling of law, and in its narrative order, found that although the temporary steps "[t]echnically . . . project[ed] into the right of way," it "belie[ved] that [the petitioner] would not object to steps allowing the [respondent] to access his property over the right of way, so long as any permanent steps to be installed are no larger than the temporary ones currently in place."

The petitioner moved for reconsideration or clarification, asserting that he did, in fact, object to the steps, and noting that there was less than three feet of space between his house and the bottom step. He requested that the trial court either order that the steps be removed, or require that any permanent steps be made of a material that would allow them to be moved in the event he needed to transport an item between the houses that would be blocked by the steps. The respondent objected, asserting that the area where the steps were located was narrow only because the petitioner had constructed improvements in the space behind his "bump out."

After taking a view, the trial court issued a further order, finding that "[r]easonable access [to the petitioner's backyard] . . . include[s] the right to move items that are wide enough to require passage upon" concrete pavers that the respondent had installed on his side of the boundary, "including a double-wide baby stroller for the [petitioner's] twins." The trial court further found that "[i]t appears . . . the area will be wide enough to accommodate such access

5

even after the [permanent] steps are installed, so long as" the respondent eliminated a discrepancy in grade between the concrete pavers and the petitioner's side of the boundary. Thus, the trial court ruled that the respondent could install the permanent steps "at any time upon the specific condition that he eliminate the difference in height between the grass that is on the [petitioner's] property and the [pavers] that [are] on his property."

The trial court further ruled, however, that "to diffuse a potential problem in the future, particularly during the wintertime, [it] will give the [petitioner] limited access to his property by passing over the [respondent's] driveway." The respondent's driveway accesses the backyard of his lot from a side street. The trial court explained that it did "not envision everyday use of this access but only on occasions when the weather or some other emergency doesn't provide the [petitioner] reasonable access to the rear of his property by going over the area where the [respondent's] steps are located." In denying the respondent's motion for reconsideration, the trial court adopted assertions in the petitioner's objection that "[i]f [the respondent] is going to build permanent steps, . . . he must give access through his driveway when the [petitioner] or any subsequent purchaser reasonably needs to get by [the] steps," and that "[t]he right of passage over [the] driveway could . . . be eliminated" if the respondent were barred from maintaining any steps within the right-of-way.

The owner of land burdened by an easement is generally not barred from making improvements within the area burdened by the easement, so long as the improvements do not interfere with the dominant estate holder's reasonable use of the easement. See Sakansky, 86 N.H. at 340. In this case, the trial court expressly found that the right-of-way, with the steps, was "wide enough to accommodate" access to the petitioner's backyard, even when moving larger items requiring passage over the respondent's concrete pavers. This finding suggests that the steps do not interfere with the petitioner's reasonable use of the right-of-way. Although the trial court determined that there might be times when "weather or some other emergency" impedes access to the petitioner's backyard, it failed to articulate how the steps, as opposed to the weather or emergency, would interfere with the petitioner's use of the right-of-way.

In denying the respondent's motion for reconsideration, however, the trial court found that the alternate right-of-way was required whenever the petitioner "reasonably needs to get by [the] steps." This suggests that, contrary to the earlier express finding, the right-of-way, in the area of the steps, is not wide enough to accommodate the petitioner's backyard access. Even if the trial court found that the steps unreasonably interfere with the petitioner's use of the right-of-way, however, it exceeded its discretion to fashion an equitable remedy when it granted the petitioner the right to pass over the respondent's driveway and backyard whenever "the weather or some other emergency doesn't provide the [petitioner] reasonable access to the rear of his property."

6

Although the trial court has equitable authority to relocate a right-of-way in order to remedy an obstruction by the servient estate holder, see Flanagan v. Prudhomme, 138 N.H. 561, 573-74 (1994), here the trial court did not simply relocate the right-of-way to the respondent's driveway; it imposed an ill-defined additional burden upon the respondent's property.

Because it is not clear that the trial court determined whether the steps interfere with the petitioner's reasonable use of the right-of-way, and because the trial court exceeded its discretion in granting the additional right-of-way, we vacate its orders to the extent that they allowed the respondent to maintain the steps and granted the additional right-of-way. Consistent with this order, the trial court shall determine, upon remand, whether the respondent's side steps interfere with the petitioner's reasonable use of the right-of-way, and if so, it shall fashion an appropriate remedy. The trial court may take a view of the property if it deems it appropriate in complying with this order.

With respect to the respondent's remaining arguments, we note that as the appealing party, it is his burden to demonstrate reversible error. Gallo v. Traina, 166 N.H. 737, 740 (2014). We assume, without deciding, that the respondent preserved each of these arguments. Based upon our review of the arguments, the trial court's orders, the relevant law, and the record submitted on appeal, we conclude that the respondent has not demonstrated reversible error. See id.

Affirmed in part; vacated in part; and remanded.

Dalianis, C.J., and Hicks, Conboy, and Lynn, JJ., concurred.

**Eileen Fox,
Clerk**

Distribution:
Rockingham County Superior Court, 218-2013-CV-00443
Honorable N. William Delker
Judicial Referee Kenneth R. McHugh
Honorable Tina L. Nadeau
Kimberly J. H. Memmesheimer, Esquire
Terence M. O'Rourke, Esquire
Lisa K. Snow Wade, Esquire
Timothy A. Gudas, Supreme Court
Allison Cook, Supreme Court
File