NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Grafton
No. 2015-0712

MAHER M. MAHMOUD

v.

TOWN OF THORNTON & a.

Submitted: June 9, 2016
Opinion Issued: September 20, 2016

Maher M. Mahmoud, self-represented party, by brief.

Mitchell Municipal Group, P.A., of Laconia (Steven M. Whitley on the brief), for defendant Town of Thornton.

Wadleigh, Starr & Peters, P.L.L.C., of Manchester (Robert E. Murphy, Jr. on the brief), for defendants Winwin Properties, LLC, Gary T. Shulman, Anita S. Shulman, Aaron Katz, and Jeremy Gavin.

Primmer Piper Eggleston & Cramer PC, of Manchester (Thomas J. Pappas on the memorandum of law), for defendant Bank of New York, as

Trustee for the Certificate Holders CWABS, Inc. Asset-Backed Certificates, Series 2006-15.

CONBOY, J. The plaintiff, Maher M. Mahmoud, appeals an order of the Superior Court (MacLeod, J.) granting the summary judgment motion filed by defendants Winwin Properties, LLC (Winwin), Gary T. Shulman, Anita S. Shulman, Aaron Katz, and Jeremy Gavin, and denying the plaintiff's cross-motion for summary judgment. We affirm.

The relevant facts follow. In 2004, the plaintiff acquired title to an approximately 17-acre parcel of land in Thornton. In April 2005, the plaintiff received subdivision approval from the Thornton Planning Board to create Lot 1, a 1.06-acre parcel; he recorded the subdivision as Plan 11808 at the Grafton County Registry of Deeds (registry of deeds). In July 2006, the plaintiff mortgaged Lot 1 to Mortgage Electronic Registration Systems, Inc. (MERS) by mortgage deed, recorded in the registry of deeds. The mortgage deed described the property as Lot 1 as depicted on Plan 11808. The mortgage deed further described the property:

> TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

Thereafter, the plaintiff received approval from the Thornton Planning Board to further subdivide the approximately 17-acre parcel into a total of eight lots; he recorded the subdivision as Plan 12600 at the registry of deeds in December 2006. As part of this subdivision approval, the southerly boundary of Lot 1 was relocated. Plan 12600 shows both the original Lot 1 lot line and the new southerly lot line, and shows Lot 1 as consisting of 2.40 acres.

The plaintiff subsequently defaulted on his loan, and MERS foreclosed on Lot 1. MERS conveyed Lot 1, pursuant to a foreclosure deed under power of sale dated March 2008, to defendant Bank of New York, as Trustee for the Certificate Holders CWABS, Inc. Asset-Backed Certificates, Series 2006-15 (Bank of New York). In June 2008, the Bank of New York conveyed Lot 1 to Winwin by quitclaim deed. The deed from the Bank of New York to Winwin included the same description as that contained in the 2006 mortgage deed, with the additional phrase, "[s]ubject to any and all matters, including setbacks if any, as shown on Plan No. 11808 and Plan No. 12600 recorded in [the registry of deeds]." Winwin conveyed the property in May 2009 to defendants

2

Gary and Anita Shulman, and the Shulmans conveyed the property in April 2014 to the current owners of Lot 1, defendants Aaron Katz and Jeremy Gavin.

In 2015, the plaintiff sued the defendants, asserting several claims relating to the size of Lot 1. Winwin moved for summary judgment on the plaintiff's petition to quiet title to Lot 1, asserting that it had previously held record title to the lot, which included the approximately 1.34 acres added to Lot 1 by the lot line adjustment (the disputed land), because the description of the property in the mortgage deed included any additions to the land. The plaintiff cross-moved for summary judgment, asserting that the foreclosure sale and mortgage deed were invalid, and that therefore he owns record title to Lot 1, including the additional disputed land. The trial court granted Winwin's motion, finding that because the 2006 mortgage deed included any additions to the land, "MERS obtained and could transfer the approximately 1.34 acres added to Lot 1 by the lot line adjustment reflected in Plan 12600." The trial court subsequently denied the plaintiff's motion for reconsideration, and this appeal followed.

"In reviewing the trial court's rulings on cross-motions for summary judgment, we consider the evidence in the light most favorable to each party in its capacity as the nonmoving party and, if no genuine issue of material fact exists, we determine whether the moving party is entitled to judgment as a matter of law." Bovaird v. N.H. Dep't of Admin. Servs., 166 N.H. 755, 758 (2014) (quotation omitted). "If our review of that evidence discloses no genuine issue of material fact and if the moving party is entitled to judgment as a matter of law, then we will affirm the grant of summary judgment." Id. (quotation omitted). "We review the trial court's application of the law to the facts de novo." Id. (quotation omitted).

"A petition to quiet title quiets title as against the world with respect to the land at issue." Porter v. Coco, 154 N.H. 353, 357 (2006). "[T]he burden is on the [petitioner] to prove good title as against all other parties whose rights may be affected by the court's decree." Id. (quotation, brackets, and ellipses omitted). The interpretation of a deed in a dispute to quiet title is a question of law, which we review de novo. See Greenan v. Lobban, 143 N.H. 18, 21 (1998). We will uphold the trial court's determination in a quiet title action unless it is erroneous as a matter of law or unsupported by the evidence. See Hersh v. Plonski, 156 N.H. 511, 514 (2007).

The plaintiff asserts that "[t]he main focus of the appeal is whether Lot 1 is 2.40 acres or 1.06 acres." He argues that "Plan No. 12600" was never part of the mortgage with MERS and "should never have been mentioned" in the deed from the Bank of New York to Winwin in 2008. (Emphasis omitted.) He asserts that Plan 12600 "hosts Lots 2 through 8, [and] the original Mortgage deed was surveyed with [metes] and bounds and set on its own Plan No. 11808." (Bolding and citations omitted.) Thus, he argues that "MERS could

not have deeded the disputed [additional] land because [it] was never part of the loan."

In resolving this issue, the trial court, noting that there are no New Hampshire cases directly on point, found Hellweg v. Cassidy, 71 Cal. Rptr. 2d 798 (Ct. App. 1998), "particularly instructive."  In Hellweg, the appellant obtained a loan secured by a deed on her residential property.  Id. at 799.  The deed was assigned from the original lender to the Federal National Mortgage Association (Fannie Mae).  Id.  The appellant subsequently recorded a lot line adjustment to add land to the residential property from adjoining, unimproved property that she also owned.  Id.

Thereafter, Fannie Mae foreclosed on the property.  Id.  Upon sale, the deed reflected the legal description of the property that existed before the lot line adjustment; however, the deed also described the property:

> Together with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances . . . and all fixtures now or hereafter a part of the property.  All replacements and additions shall also be covered by this Security Instrument.  All of the foregoing is referred to in this Security Instrument as the "Property."

Id. at 800 (quotation omitted).  Fannie Mae sold the property to the respondents by deed that included in the legal description of the property the additional property resulting from the lot line adjustment.  Id.  The appellant claimed that "because the deed . . . assigned to Fannie Mae and the . . . deed upon sale in foreclosure did not specifically include the lot line adjustment, and because the additional property had not been necessary to secure the loan, the respondents [were] not entitled to the additional property."  Id.  The court disagreed, holding that the language of the deed was "clear and explicit," and "operate[d] automatically to add easements, fixtures and additions to the secured property obtained after the deed was provided to the lender."  Id.  The court reasoned that, "[i]f this were not so, the conflict between the legal lot line adjustment recorded by [the appellant] and the deed she provided in foreclosure could jeopardize future alienation of" the adjacent, contiguous property.  Id. at 801.

Here, the trial court found that the mortgage deed contained "language virtually identical to that in Hellweg," and that such language, "like the mortgage deed language in Hellweg, operate[d] automatically to add additions to the secured property obtained after the deed was provided to the lender." (Quotation and ellipsis omitted.)  The trial court concluded, therefore, that "when [the plaintiff] adjusted the southerly lot line of Lot 1 after the execution of the Mortgage Deed, thereby increasing the size of Lot 1 to 2.40 acres, this additional acreage was automatically added to the secured property by virtue of

4

the . . . language in the Mortgage Deed." Because "MERS obtained and could convey the approximate[ly] 1.34 acres added by this lot line adjustment," the trial court determined that defendants Katz and Gavin hold record title to the disputed land and, accordingly, quieted title to Lot 1 in their names.

We agree with the trial court that the language in the mortgage deed granted to MERS in 2006 clearly and automatically included any additions to the mortgaged property. See Lussier v. N.E. Power Co., 133 N.H. 753, 756-57 (1990) (clear and unambiguous language in a deed is controlling). The 2006 mortgage deed plainly stated that it included, together with the legal description of the property, "improvements . . . easements, appurtenances, and fixtures now or hereafter a part of the property" and "[a]ll replacements and additions." Given this unambiguous language, the trial court correctly concluded that MERS obtained and could convey the entire 2.40 acres that comprise Lot 1. Accordingly, we affirm the trial court's rulings on the cross-motions for summary judgment and its ruling quieting title in defendants Katz and Gavin to Lot 1, including the disputed additional land.

The plaintiff raises numerous additional challenges to the trial court's order, including its decision granting the Town's motion to dismiss. As the appealing party, the plaintiff has the burden of demonstrating reversible error. Gallo v. Traina, 166 N.H. 737, 740 (2014). Based upon our review of the trial court's order, the plaintiff's challenges to it, the relevant law, and the record submitted upon appeal, see Bean v. Red Oak Prop. Mgmt., 151 N.H. 248, 250 (2004), we conclude that the plaintiff has not demonstrated reversible error. See Gallo, 166 N.H. at 740.

Affirmed.

DALIANIS, C.J., and HICKS, LYNN, and BASSETT JJ., concurred.